**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GARDENIA LANG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 7274 |
| | ) | |
| CITY OF POSEN, POLICE DEPARTMENT OF | ) | Judge Suzanne B. Conlon |
| POSEN, POLICE OFFICER V. McLINE | ) | |
| (badge #17), CHIEF OF POLICE OF THE POSEN | ) | |
| POLICE DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Gardenia Lang ("Lang") filed an amended complaint ("Complaint") against the Village of Posen ("Village"), the Posen Police Department[1], Officer Victor McCree ("McCree"), and Posen's Chief of Police[2] (collectively referred to hereinafter as "Defendants") seeking redress for a number of alleged civil rights violations pursuant to 42 U.S.C. §1983.[3]  Lang's civil rights claims are based upon a violation of her Fourth Amendment right to be free from unreasonable seizures; namely, false arrest, excessive force, and the impoundment of the vehicle that she was operating on the date of her arrest.   She has also brings a claim against the Village on a theory of a failure to train.  Lastly, Lang has alleged two ancillary state claims: that the Defendants were

---

[1] The Village of Posen Police Department is not an entity capable of being sued.  *Reese v. Chicago Police Department*, 602 F.Supp. 441, 443 (N.D.Ill. 1984). Consequently, summary judgment should be entered against Lang on all claims that it is named as a separate defendant.

[2] The Chief of Police is only named in the caption and there are no allegations concerning him in the Complaint.  Accordingly, Defendants assume he is being sued in his official capacity (see *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991)); thus, any claim against him is a claim against the Village. *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001).

[3] Lang's identification of the Village as a "City" and her identification of her arresting officer as "Officer V. McLine" are in error.

negligent by violating her Fourth Amendment rights; and, the intentional infliction of emotional distress arising by way of her arrest and the impoundment of the vehicle she was operating. The Defendants now move for summary judgment on the Complaint.

## STANDARDS FOR SUMMARY JUDGMENT

A party seeking an award of summary judgment in her favor must show that no genuine issue of fact exists for trial and that she is entitled to judgment in her favor as a matter of law. Fed. R. Civ. P. 56I. It is incumbent upon the movant to demonstrate the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 & 323 (1986). While the court must construe the facts as favorably to the non-moving party as the record permits, *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir. 1991), it is not required to draw every conceivable inference from the record, only those inferences that are reasonable. *Bank Leumi Le. Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). The non-moving party's burden entails more than the mere raising of "some metaphysical doubts as to the material facts." *Matsusita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). To the contrary, "the nonmoving party must set forth specific facts, more than mere conclusions and allegations, sufficient to raise a genuine issue for trial; the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Edinburg*, 346 F.3d 752 (7th Cir. 2003). As will be discussed, the Defendants are entitled to an award of summary judgment in their favor.

## STATEMENT OF UNCONTESTED FACTS

On December 14, 2007, Gardenia Lang ("Lang") was present in the Village of Posen operating a vehicle that was owned by her daughter, Monica Williams. (Defendants' Statement of Uncontested Facts ("Facts"), ¶3 & ¶4). At that time, Lang was traveling southbound on San Francisco Avenue approaching its intersection with 147th Street; 147th Street is a four-lane east-west thoroughfare. (Facts, ¶5). The aforementioned intersection is controlled by a stop sign for vehicles approaching from the southerly direction. (Facts, ¶5). As she edged into the

intersection, Lang noticed a SUV traveling westbound on 147th Street.  (Facts, ¶6).  She came to a complete stop before turning right to proceed westbound on 147th Street.  (Facts, ¶6).  Almost immediately thereafter, Lang noticed a police vehicle with its emergency lights activated to her rear.  (Facts, ¶6).  Accordingly, Lang pulled into a private parking lot of a shopping plaza located at 147th Street and Sacramento Avenue.  (Facts, ¶6). The shopping plaza contains a beauty salon and a supermarket.  (Facts, ¶6).

Officer McCree is a Village police officer and the officer who curbed Lang's vehicle. (Facts, ¶2 & ¶7).  After following Lang into the shopping plaza, McCree exited his vehicle and approached Lang's automobile to inform her that she was being pulled over for disobeying a stop sign.  (Facts, ¶7).  After retrieving Lang's driver's license and insurance, he returned to his squad car with that documentation.  (Facts, ¶7).  McCree accessed Lang's driver's history through his on-board computer and through dispatch.  (Facts, ¶7).  The search revealed that Lang's driver's license was suspended.  (Facts, ¶7).  McCree also learned that the vehicle Lang was driving was registered to a Monica Williams.  (Facts, ¶7).  Lang admits that her license was suspended on December 14, 2007.  (Facts, ¶13).  McCree returned to Lang's vehicle and advised her that she was to be placed under arrest. (Facts, ¶8).  He requested that Lang turn off the vehicle and hand him the keys to the automobile.  (Facts, ¶8).  Lang, apparently knowing that the car was to be impounded, requested that she be given an opportunity to contact her daughter to remove the vehicle from the parking lot.  (Facts, ¶8).  McCree refused this request.  (Facts, ¶8).

Lang was placed in handcuffs by McCree for transportation to the police department for processing.  (Facts, ¶9).  After the handcuffs were secured, Lang complained about their tightness.  (Facts, ¶9).  McCree advised Lang that he was required to handcuff her but warned her not to lean back in the vehicle or the handcuffs could tighten further.  (Facts, ¶9).  No further conversation was had concerning the handcuffs.  (Facts, ¶9).  Lang was in handcuffs for approximately twenty-two minutes before being released on her own recognizance.  (Facts, ¶9 & ¶10).  Before leaving the station, she was issued two citations: disobeying a stop sign (625 ILCS 5/11-1204(b)); and, driving while her driver's license was suspended (625 ILCS 5/6-303). (Facts, ¶10).  She characterizes her arrest and the towing the vehicle as unfair.  (Facts, ¶14).

Lang received no physical or emotional injuries as a result of her encounter with McCree and, consequently, sought no medical treatment.  (Facts, ¶14).

After Lang's arrest, Williams' vehicle was impounded by a private reclamation company.  (Facts, ¶11).  McCree made the decision to impound the vehicle because Lang was the only person in the vehicle and the owner was not on the scene.  (Facts, ¶4 & ¶11).  Due to the fact that Lang was arrested in public view and on a Friday night, McCree believed that anyone witnessing Lang's arrest could view her absence from the vehicle as an opportunity for vandalism or theft.  (Facts ¶11).  Impounding the vehicle was an effort to protect Williams' vehicle from those crimes.  (Facts, ¶11).

## ARGUMENT

II.  <u>Fourth Amendment Claims</u>

*The tightness of Lang's handcuffs was not unreasonable as a matter of law; thus, Lang's allegations of excessive force must fail.*

Lang claims that she was subject to excessive force on account of the tightness of the handcuffs that were placed on her during the arrest.  Claims of excessive force invoke the Fourth Amendment's prohibition against unreasonable seizures.  *Graham v. Connor*, 490 U.S. 386, 394 & 395 (1989).  When examining the reasonableness of force employed to accomplish a seizure, a court must examine the totality of circumstances surrounding the encounter.  *Edinburg*, 346 F.3d 752 (7th Cir. 2003).  To that end, the inquiry into the reasonableness of the force employed is an objective one.  *Graham*, 490 U.S. at 399.  That is, the "particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Bell v. Irwin*, 321 F.3d 637, 639 (7th Cir. 2003).  Put simply, an officer's subjective beliefs or his motivations are irrelevant to a claim for excessive force.  *Graham*, 490 U.S. at 397.

The Seventh Circuit Court of Appeals in *Tibbs v. City of Chicago*, 469 F.3d 661 (7th Cir. 2006), explained the limits of an excessive force claim based on overly-tight handcuffs.  In *Tibbs*, the court distinguished the facts that it was presented with from those in its earlier decisions of *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) and *Herzog v. Village of Winnetka*,

4

309 F.3d 1041 (7th Cir. 2002).  See generally *Tibbs*, 469 F.3d at 665 & 666.   Doing so, the panel

granted summary judgment for the defendants in that case:

> The record here indicates the following:  Tibbs likely suffered some discomfort
> and pain from handcuffs that Officer Kooistra applied somewhat too tightly;
> Tibbs complained to Officer Kooistra once about his handcuffs without
> elaborating on any injury, numbness, or degree of pain; Tibbs was handcuffed for
> about twenty-five to thirty minutes (from the time of his arrest to his arrival at the
> lockup facility); he experienced redness on his wrists for less than two days; and
> he neither sought nor received medical care for any alleged wrist injury.
>
> Tibbs cites no cases in which any court has permitted a plaintiff to reach a jury
> based on such mild allegations.   We agree with the district court that no
> reasonable jury could find Officer Kooistra's actions were objectively
> unreasonable.  *Tibbs,* 469 F.3d at 666.

The facts in this case are even more benign than those that were presented to the Seventh Circuit

in *Tibbs*.


In the instant matter, Lang was placed in handcuffs by McCree to be transported to the

police department for processing.  (Facts, ¶9).  While Lang offered a vague complaint about the

tightness of her handcuffs, she did so only once.  (Facts, ¶9).  Lang was only in handcuffs for 22

minutes and did not expound upon the degree or the particulars of the pain she was suffering.

(Facts, ¶9).  Further, she suffered no physical injury from the encounter nor did not seek medical

care.   (Facts,  ¶14).   No reasonable jury could find that Officer McCree's conduct was

unreasonable under the circumstances.  *Cusack v. City of Des Plaines*, 2007 WL 2484325, 4

(N.D.Ill. 2007) (summary judgment awarded on an overly-tight handcuff case as the only

evidence of misconduct was that the officer applied handcuffs aggressively and refused to loosen

upon a detainee's complaint of tightness).  McCree is entitled to summary judgment as a matter

of law.

*Lang's false arrest claim is barred as a matter of law because McCree had probable cause for her arrest.*

Lang claims that her Fourth Amendment right to be free from unreasonable seizures was violated when she was arrested for driving with a suspended license. Specifically, she claims that it was unreasonable to be arrested for a violation of the Illinois Vehicle Code, 625 ILCS 5/1-100, *et seq.* In order for Lang to prevail on her false arrest claim she must demonstrate that her arresting officer lacked probable cause to arrest. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). The existence of probable cause is an absolute bar to a claim for false arrest under Section 1983. *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007). An officer possesses probable cause when the facts and circumstances within his knowledge are sufficient to warrant a prudent person to believe that the suspect has committed an offense. *Rodriguez*, 509 F.3d at 398. Therefore, probable cause is assessed based upon facts as they would have appeared to a reasonable person in the position of the arresting officer. *Kelley*, 149 F.3d at 646.

In this case, Lang was arrested for driving while her license was suspended (625 ILCS 5/6-303).[4] While Lang admits that she was driving while her license was suspended, she appears to quarrel with the arrest upon the precipitating offense's triviality. But, no matter how innocuous Lang feels her crime, it plays no part in this court's determination of whether her arrest was reasonable. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *Chortek v. City of Milwaukee*, 356 F.3d 740, 745 (7th Cir. 2004) ("Arrest for a minor, non-jailable offense does not violate the Fourth Amendment."). In the instant matter, it is uncontested that Lang was operating the vehicle in violation of the law and that McCree was aware of those facts. McCree had probable cause to arrest Lang as a matter of law. *Williams*, 509 F.3d at 401 (summary judgment appropriate, no violation of Fourth Amendment when officer has probable cause to arrest for minor traffic violation); see also *Covington v. Smith*, 259 Fed.Appx. 871, 875 (7th Cir. 2008). Accordingly, Lang's false arrest claim is barred as a matter of law.

---

[4] Lang was also issued a citation for disobeying a stop sign 625 ILCS 5/11-1204 (b). (Facts, ¶10).

Parenthetically, the fact that Lang claims that she did not disobey a stop sign does not alter the reasonableness of her arrest for driving on a suspended license.

> The exclusionary rule bars evidence obtained from, or as a result of, lawless official acts. That doctrine is not applicable here [in a civil rights action]. As explained in *Townes v. City of New York*, the value of the Fourth Amendment is not served if Plaintiff, who illegally possessed cocaine, is allowed to reap financial benefit from his arrest. Even if Defendants lacked probable cause to stop Plaintiff's vehicle, they certainly had probable cause to arrest him upon discovery of the cocaine.
>
> As found in *Townes*, a 'lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a §1983 claimant.' *Rivera v. Burke*, 2008 WL 345612, 5 (N.D.Ill. 2008) citing *Townes v. City of New York*, 176 F.3d 138, 149 (2nd Cir. 1999)

Thus, even if this court were to find that McCree lacked justification to stop Lang's vehicle for disobeying a stop sign, the evidence obtained from that stop (*i.e.*, suspended driver's license) would nonetheless bar her claim for false arrest. *Rivera*, 2008 WL 345612, 5 (summary judgment proper, plaintiff's argument that defendants searched vehicle before they had probable cause is irrelevant to false arrest claim). McCree respectfully request that summary judgment be awarded in his favor and against Lang.

*Lang has no standing to sue based upon the seizure of the vehicle she was driving.*

Lang challenges the seizure of the vehicle that she was driving on December 14, 2007. She claims that the seizure was unreasonable because McCree would not entertain a less intrusive alternative to impoundment. Principally, Lang has no standing to challenge the seizure of the vehicle she was operating because she does not own the car. *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001) (husband had no standing to challenge the seizure of his wife's horses as he did not own them); cf. *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 & 830 (7th Cir. 1999) (in a procedural due process claim, plaintiff lacked standing to challenge the constitutionality of seizure and disposal of abandoned vehicles where plaintiff did not own an automobile); see also *Nuet v. Guthrie*, 72 Fed.Appx. 468, 469 (7th Cir. 2003) (plaintiff had no

standing to challenge seizure of truck owned by his wife).  On standing alone, summary judgment is appropriate.

Even if this court finds that Lang has standing to challenge the seizure of Williams' vehicle, said seizure was not unreasonable under the circumstances.  As with any claim based on the Fourth Amendment, this court's inquiry focuses on the seizure's reasonableness.  *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996).  A police initiated impoundment is reasonable if it is supported by probable cause, "or if it is in furtherance of 'public safety' or 'community caretaking functions,' such as removing 'disabled or damaged vehicles,' and 'automobiles which violate parking ordinances, and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic.'" *Duguay*, 93 F.3d at 352 (citing *South Dakota v. Opperman*, 428 U.S. 364 (1976).  "An impoundment may be proper under the community caretaking doctrine if the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle, and also if it is necessary to remove the vehicle from an exposed or public location." *Harrington v. Heavey*, 2006 WL 3359388, 5 (N.D.Ill. 2007) (citing *Miranda v. City of Cornelius*, 429 F.3d 858, 865 (9th Cir. 2005).

In this case, it is uncontested that Lang was arrested with no passengers in the vehicle to which she could entrust its speedy and efficient removal.  See *Dugay*, 93 F.3d at 353.  It is further uncontested that Lang was not the owner of the vehicle in question.  (Facts, ¶4).   If left unattended, the automobile would have been unsupervised on a Friday night in a private parking lot adjacent to major thoroughfare.  (Facts, ¶11).  Anyone witnessing Lang's arrest could view her absence from the vehicle as an opportunity for theft or vandalism. (Facts, ¶11).   McCree took these factors into consideration and his choice to impound the vehicle was not unreasonable under community caretaking functions.   *United States v. Griffin*, 729 F.2d 475, 480 (7th Cir. 1984) (impoundment reasonable under community caretaking doctrine to protect unknown owner's vehicle from damage, theft or vandalism); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1477, n. 4 (9th Cir. 1993) (impoundment of arrestee's car from private parking lot "to protect the car from vandalism or theft" was reasonable under the community caretaking function).

Notwithstanding, Lang argues that her daughter could have removed the vehicle if she had been allowed to make a phone call. Manifestly, Lang confuses what could have been done with what the Fourth Amendment requires to be done. That is, under the reasonableness standard "the real question is not what 'could have been achieved, but whether the Fourth Amendment *requires* such steps'…The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983) (emphasis in original); see also *Cady v. Dombrowski*, 413 U.S. 433, 447 (1973). Indeed, the United States Supreme Court has held that the Fourth Amendment does not require a police officer to allow an arrestee to arrange for the safekeeping of his property as an alternative to impoundment and an attendant inventory search of a vehicle's contents. *Colorado v. Bertine*, 479 U.S. 367, 373 & 374 (1987). Even if the Fourth Amendment required such burdens to be placed on officers in the field, there is no evidence that McCree was aware that Monica Williams—the vehicle's owner—was Lang's daughter; thus, the impoundment would be reasonable under the circumstances. See *United States v. Ponce*, 8 F.3d 989, 996 (5th Cir. 1994) (impoundment proper; even if driver was entrusted with owner's vehicle, officer was not required to assume that owner would allow driver's girlfriend permission to operate vehicle). In light of the above, McCree respectfully request that summary judgment be awarded in his favor and against the plaintiff.

*As Lang suffered no constitutional violation her Monell claims must fail as a matter of law.*

Lang alleges that her Fourth Amendment rights were violated through the Village failure to properly train McCree. However, as there is no underlying constitutional violation, Lang's claims against the Village must fail as well. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000); *Grossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997); *Thompson v. Boggs*, 33 F.3d 847, 859 n. 11 (7th Cir. 1994). Consequently, summary judgment is appropriate in favor of the Village and against Lang as a matter of law.

II.    Illinois State Law Claims

*Plaintiff's negligence claim is an attempt to recover directly under the Fourth Amendment.*

Plaintiff alleges that the Defendants had a duty not to breach her Fourth Amendment rights and breached those rights by effectuating the unreasonable seizure of her and her vehicle. Although the count is titled "negligence" and purports to be based in the State of Illinois common law, it clearly cannot be the case as the Fourth Amendment protects federal rights. That being said, one has to assume that Lang's "negligence" claim is simply a "Trojan horse" for a direct cause of action under the Fourth Amendment.  But, there is no direct cause of action under the Fourth Amendment; a plaintiff must avail herself "of the federally enacted statutory mechanism for redressing deprivations of federal rights"—Section 1983.  *Davis v. Kirby*, 755 F.Supp. 199, 200 (N.D.Ill. 1990); *Bieneman v. City of Chicago*, 662 F.Supp. 1297, 1299 & 1300 (N.D.Ill. 1987); *Strauss v. City of Chicago*, 614 F.Supp. 9, 10, (N.D.Ill. 1984), aff'd 760 F.2d 765 (7th Cir. 1985).  Aside from the claim being duplicative of her previous Section 1983 allegations, no seizure complained of in this case can be considered objectively unreasonable as a matter of law.  See *infra* pgs. 4-9.  Therefore, summary judgment is proper.

*Lang suffered no emotional injury and therefore may not proceed on her claim of intentional infliction of emotional distress.*

Under Illinois law, a plaintiff may only recover on a claim of intentional infliction of emotional distress if: 1) the defendant's conduct was extreme and outrageous; 2) the emotional distress suffered by plaintiff was severe; and, 3) the defendant knew that severe emotional distress was certain or substantially certain to result from such conduct.  *Johnson v. K-Mart Corporation*, 311 Ill.App.3d 573, 580, 723 N.E.2d 1192, 1197 (2000).  Further, in order for a plaintiff to survive a motion for summary judgment, there must be an issue of fact concerning all three elements.  *Johnson*, 311 Ill.App.3d at 580 & 581, 723 N.E.2d at 1198.  Although there are no facts from which to infer knowledge that severe emotional distress was certain or substantially certain to result from Lang's arrest or the impoundment of the vehicle, McCree's conduct was not extreme and outrageous nor was the emotional distress suffered by Lang severe. Consequently, summary judgment should be awarded to the Defendants.

Lang bases her claim of intentional infliction of emotional distress on the grounds that her arrest and the impoundment of the vehicle were unfair.  (Facts, ¶14).   Initially, if this court finds that McCree's conduct was reasonable for Fourth Amendment purposes, it would be incongruous to hold that the same conduct was extreme and outrageous.  *Dean v. City of Worcester*, 924 F.2d 364, 369 (2nd Cir. 1991) (for purposes of I.I.E.D., a defendant's conduct cannot be reasonable and extreme and outrageous at the same time).   That being said, even if Lang was treated unfairly, such trivialities do encompass the type of conduct that Illinois recognizes as extreme and outrageous.  *Adams v. Sussman & Hertzberg*, Ltd., 292 Ill.App.3d 30, 38, 684 N.E.2d 935, 941 & 942 (1997) ("humiliation and worry is not sufficient to give rise to a cause of action" for intentional infliction of emotional distress); see also *Miller v. Equitable Life Assurance Society*, 181 Ill.App.3d 954, 957, 537 N.E.2d 887, 889 (1989) (stress not severe enough to establish claim of emotional distress where conduct complained of was inconsiderate, uncooperative, unprofessional and unfair).  Further, "[t]he emotional distress required to support the cause of action must be so sever that no reasonable person could be expected to endure it." *Adams*, 292 Ill.App.3d at 38, 684 N.E.2d at 942.   In the instant matter, Lang admits that she suffered no emotional injuries as a result of her encounter nor did she seek any medical care. (Facts, ¶14).  And, without proof an emotional injury or the severity of the distress suffered (i.e., hospitalization, psychiatric treatment, or medication) she may not proceed on this claim as a matter of law.  *Adams*, 292 Ill.App.3d at 39, 684 N.E.2d at 942.

## CONCLUSION

There are no genuine issues of material fact. Defendants respectfully request that summary judgment be awarded in their favor and against Lang as a matter of law.

S/  Joseph Cainkar

JOSEPH CAINKAR
LOUIS F. CAINKAR, LTD.
Attorneys for the Village of Posen
30 North LaSalle Street - #3922
Chicago, Illinois 60602-3333
312/236-3985


## CERTIFICATE OF SERVICE

I, the undersigned, an attorney, on oath state: I served this Motion for Summary Judgment by e-mailing a copy of the same to the plaintiff on May 30, 2008.


S/  Joseph Cainkar