4C

**FILED**

**RECEIVED**

JUN 2 4 2008

6-24-2008

Judge Suzanne B. Conlon

United States District Court

In The United States District Court
For The Northern District of Illinois
Eastern Division

JUN 2 4 2008

JUDGE SUZANNE B. CONLON
United States District Court

Gardenia Lang

     Plaintiff

v.

City of Posen, Police Department
of Posen, Police officer McCree,
Chief of Police of Posen Police

)
)
)
)
)
)
)

No. 07 C 7274

Judge Suzanne B. Conlon

### Plaintiff's Memorandum of Law In Support of Cross Motion for Summary Judgment, and Response to Defendants Motion for Summary Judgment

The Defendant's Motion for Summary Judgment must fail because the Plaintiff was never served under Fed. R. Civ. P. 5 (D), and the Defendants fail to recognize that the moment the Plaintiff was stopped she was seized in violation of her Fourth and Fourteenth Amendment rights. The Plaintiff's claim of a Fourth Amendment violation invokes the proscribed protection as to the random stop and the unreasonableness of how the plaintiff was treated after the initial stop. In Tennessee v. Garner, the Court held that the protections proscribed under the Fourth Amendment apply not only to a legal reason for a seizure but also to how the seizure is performed. 471 U.S. 1(1985). The Plaintiff claims her Fourth Amendment was violated because she was seized without probable cause, and the custodial arrest and incidental treatment was unreasonably performed. Moreover, a reasonable officer would have given her a citation and send her on her way. The conduct of the arresting officer rise to the level of extreme and outrageous behavior

1

causing sever emotional distress. The Plaintiff suffered physical pain with headaches and vomiting.

## Standard of Review

Summary Judgment is appropriate when the pleading, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. <u>Rogers v. City of Chicago</u>, 320 F.3d 748, 752 (7th Cir 2003).

## Statement of Facts

Gardenia Lang is a single Parent of two young women and the sole supporter of her household. She is an honest hard working woman. On the night of December 14, 2007 Gardenia was driving home from work when Officer McCree, abruptly and without any justification, pulled her over. It was a Friday and, Gardenia had worked hard all week. She was tired and just wanted to go home. She had expected, after working hard all week, to be let alone. However, Officer McCree had a different idea, unknown to Gardenia Lang. She ponders why he was pulling her over. Gardenia pulled off the road onto a parking lot, where her car was legally parked and out of the way of traffic. Officer McCree approached Gardenia Lang with all of the power of the Posen Police Department behind him; Power that he would use. Gardenia's expectation of privacy, "the most comprehensive of rights and the right most valued by civilized men" would be now subject to the discretion of Officer McCree and he knew it. <u>Winston v. Lee</u>, 470 U.S. 753(1985). There was a conversation between Gardenia Lang and Officer McCree. The

2

Officer told Gardenia that she had passed up a stop sign as a pretext for why he stopped her. The Officer was not satisfied with how the communication went between himself and Gardenia Lang and therefore, he checked her driving record and found out that there had been an administrative error by the emissions inspection agency placing a hold on her license, under 625 ILCS 5/13A-112. However, the Officer improperly issued a citation under 625 ILCS 5/6-303 and placed Gardenia under arrest. He proceeded to tightly handcuff Gardenia and impound her vehicle.

**Argument**

The Defendants filed a Certificate of Service with this court indicating that their motion for summary judgment was served on the Plaintiff by e-mail. This Certificate of Service was signed by Joseph Cainkar. (See exhibit A). The Federal Rules of Civil Procedure is clear, "if service under rules 5(a) is made by delivering a copy by any other means, including electronic means, it must be consent to in writing by the person served. Furthermore, service by electronic means under rule 5(b)(2)(D) is not effective if the party making service learns that the attempted service did not reach the person to be served." The Defendants send a letter to the Plaintiff's address requesting a deposition. The Plaintiff complied with that request. Therefore, the Defendant knew how to contact the Plaintiff. The Plaintiff never provided the Defendants with an e-mail address and therefore never received an e-mail from the Defendant concerning the motion for summary judgment or anything else. The Defendants blatantly disregarded Federal Rules in an attempt to litigate this case without the Plaintiff. For this reason the Defendants should be sanctioned and their motion for summary judgment should be denied.

3

**Fourth Amendment Violation**

The rule is that the right of the people to be secure in their persons, houses, papers, and

effects, against unreasonable searches and seizures, shall not be violated, and no warrants

shall issue, but upon probable cause, supported by oath or affirmation, and particularly

describing the place to be searched, and the person or thing to be seized. U.S. Const.

amend. IV. The Fourth Amendment prohibits unreasonable seizure of a person.

California v. Hodari D., 499 U.S. 621(1991). The court reaffirmed that a person has been

"seized" within the meaning of the Fourth Amendment if, in view of all the

circumstances surrounding the incident, a reasonable person would have believed that he

was not free to leave. Id.


The Defendant argues a Defense for False Arrest under 42 U.S.C. § 1983. However, the

Plaintiff's claim is a direct violation of the Fourth Amendment (The right of the people to

be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures). The Plaintiff's claim of Fourth Amendment violation is predicated on the initial

random traffic stop under the pretext of disregarding a stop sign. (See Exhibit E, Court

Disposition). There is no question that the Plaintiff stopped at the stop sign, because the

Defendant agreed that the Plaintiff had to stop due to an SUV traveling westbound on

147th street, impeding any movement of the Plaintiff's vehicle. (See Exhibit B

Defendant's Motion for Summary Judgment). Therefore, the citation for disobeying a

stop sign was a pretext for an illegal random stop. This establishes that the initial stop

was without probable cause and a clear violation of the Fourth Amendment. The

Defendants' Motion for Summary Judgment must fail because; a reasonable person in the

4

Defendant's position would not have escalated the Constitutional infraction by taking the Plaintiff into a custodial arrest for a petty offense. The Plaintiff should have been arrested for a violation of 625 ILCS 5/13A-112(1994) and not 625ILCS 5/6-303 as the Defendant improperly did. (See Exhibit C and D). 625 ILCS 5/13A-112(1994) states that "any person who violates subsection (c) shall be guilty of a petty offense." (See exhibit C page 3). It is the totality of the circumstances surrounding the encounter that determine the reasonableness of the execution of the seizure. Edinburg, 346 F.3d 752 (7th Cir. 2003). The combination of the arrest for a petty offense, tight handcuffs, and the impoundment of the car, which pushes it over the top, makes officer McCree's conduct extremely outrageous. Under the common law practice of Illinois, if you are stopped for running a red light you are given a citation. Image being stopped for a red light and getting arrested, being handcuffed and having your car impounded. Moreover, a violation of 625 ILCS 5/13A-112(1994) does not rise to the level of running a red light.

In Rivera v. Burke, the Plaintiff was stopped by the Chicago Police because, he did not have a front license plate on his car and he had objects hanging from his rearview mirror. This case is different, Burke, because the Court found that the Chicago Police had probable cause to make the stop. 2008 WL 345612 (N.D.Ill.). Here, the Plaintiff's disposition shows that the Court Stricken the case W/Leave and, the record show that the Defendant had no probable cause to make the stop. (See Exhibit E).

The U.S, Supreme Court held that "it is nevertheless clear that a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably

5

infringes interests protected by the Constitution. <u>Illinois v. Caballes,</u> 160 L. Ed. 2d 842, 124 S. Ct. 834 (2005). In this case the discovery of a possible petty offense (failure to comply with emissions inspection) may have started ~~of~~ as lawful seizure but, the abuse of police discretion infringed Gardenia's interest protected by the Constitution. <u>Id.</u> Furthermore, the trial Court found that there was no violation of Driving on a suspended license. (See exhibit F, Report of Court Disposition).

**The Chief of Police allowed its Officer to use unlimited discretion which intruded on the Plaintiff's "Expectations of Privacy" in violation of 42 U.S.C. § 1983.**

42 U.S.C. § 1983 provides civil remedies for deprivations of rights "under color of law. The Chief of Police individually and in his employment as a supervisor allowed Officer McCree to randomly stop a woman in violation of her right to be secure in her person. (See Exhibit B page 2 and 3 and Exhibit F). The conduct of police officers, randomly stopping women, is impermissible behavior and liability attach to the Officer's supervisors and the Police for allowing such behavior. <u>United States v. Guest</u>, 383 U.S. 745, 86 S. Ct. 1170 (1966).

In <u>Guest,</u> six defendants were indicted for conspiracy by the defendants to deprive a Negroes citizen of the free exercise of several rights secured by the Constitution. One of the defendants was a police officer. One of the means of accomplishing the object of the conspiracy, according to the indictment, was causing the arrest of Negroes by false reports that such Negroes had committed criminal acts. The court held that the extent of

6

official involvement was broad enough to cover a charge of active connivance by agents

of the State in making false reports, amounting to official discrimination clearly sufficient

to constitute denial of rights protected by the Constitution. The defendants were indicted

under 18 U.S.C. § 241 the criminal counterpart of 42 U.S.C. § 1983.

In this case, Officer McCree's conduct, the object to deprive the Plaintiff of the free

exercise of rights secured by the Constitution, amounts to State action because, he was

acting as an agent of the State. Therefore, liability attach to the Chief of Police and the

Posen Police Department, under 42 U.S.C. § 1983.

In Monell v. New York City Dept. of Social Service, The stated basis for municipal

liability was the failure of these bodies adequately to train the police officers involved

436 U.S. 658 (1978). In short a municipality can be sued under 42 U.S.C. § 1983 for

municipal policy or custom, such as a failure to adequately train their police officers.

Leatherman v. Tarrant County, 507 U.S. 163, 113 S. Ct 1160 (1993).

In this case, the Plaintiff brings her claim against the Posen Police Department and the

Village of Posen under 42 U.S.C. § 1983 based on a failure to train theory and not

respondents superior liability. Id. The Village did not train officer McCree not to

randomly stop women thereby causing the Plaintiff deprivation of rights under the Fourth

Amendment. Id.

Furthermore, Officer McCree initial stop was without probable cause, therefore there is

no bar to the Plaintiff's claim under 42 U.S.C. § 1983 against the Posen Police Dept.


Wherefore, the Plaintiff humbly request that this honorable Court deny the Defendants

Motion fro Summary Judgment and Grant the Plaintiff's Cross Motion as a matter of law.

*Gardenia Lang*

Gardenia Lang, Plaintiff

16344 Lawndale Ave

Markham IL 60428

JOSEPH CAINKAR
LOUIS F. CAINKAR, LTD.
Attorneys for the Village of Posen
30 North LaSalle Street - #3922
Chicago, Illinois 60602-3333
312/236-3985

**RECEIVED**

JUN 2 4 2008

JUDGE SUZANNE B. CONLON
United States District Court

### CERTIFICATE OF SERVICE

I, the undersigned, an attorney, on oath state:  I served this Motion for Summary Judgment by e-mailing a copy of the same to the plaintiff on May 30, 2008.

S/ Joseph Cainkar

12

**RECEIVED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUN 2 4 2008

JUDGE SUZANNE B. CONLON
United States District Court

GARDENIA LANG,                    )
                                  )
        Plaintiff,                )
                                  )
    v.                            )   No. 07 C 7274
                                  )
CITY OF POSEN, POLICE DEPARTMENT OF  )   Judge Suzanne B. Conlon
POSEN, POLICE OFFICER V. McLINE   )
(badge #17), CHIEF OF POLICE OF THE POSEN )
POLICE DEPARTMENT,                )
                                  )
        Defendants.               )

**F I L E D**

JUN 2 4 2008

Judge Suzanne B. Conlon
United States District Court

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Gardenia Lang ("Lang") filed an amended complaint ("Complaint") against the Village
of Posen ("Village"), the Posen Police Department[1], Officer Victor McCree ("McCree"), and
Posen's Chief of Police[2] (collectively referred to hereinafter as "Defendants") seeking redress
for a number of alleged civil rights violations pursuant to 42 U.S.C. §1983.[3] Lang's civil rights
claims are based upon a violation of her Fourth Amendment right to be free from unreasonable
seizures; namely, false arrest, excessive force, and the impoundment of the vehicle that she was
operating on the date of her arrest. She has also brings a claim against the Village on a theory of
a failure to train. Lastly, Lang has alleged two ancillary state claims: that the Defendants were

---

[1] The Village of Posen Police Department is not an entity capable of being sued. *Reese v. Chicago Police Department*, 602 F.Supp. 441, 443 (N.D.Ill. 1984). Consequently, summary judgment should be entered against Lang on all claims that it is named as a separate defendant.

[2] The Chief of Police is only named in the caption and there are no allegations concerning him in the Complaint. Accordingly, Defendants assume he is being sued in his official capacity (see *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991)); thus, any claim against him is a claim against the Village. *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001).

[3] Lang's identification of the Village as a "City" and her identification of her arresting officer as "Officer V. McLine" are in error.

negligent by violating her Fourth Amendment rights; and, the intentional infliction of emotional distress arising by way of her arrest and the impoundment of the vehicle she was operating. The Defendants now move for summary judgment on the Complaint.

## STANDARDS FOR SUMMARY JUDGMENT

A party seeking an award of summary judgment in her favor must show that no genuine issue of fact exists for trial and that she is entitled to judgment in her favor as a matter of law. Fed. R. Civ. P. 56I. It is incumbent upon the movant to demonstrate the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 & 323 (1986). While the court must construe the facts as favorably to the non-moving party as the record permits, *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir. 1991), it is not required to draw every conceivable inference from the record, only those inferences that are reasonable. *Bank Leumi Le. Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). The non-moving party's burden entails more than the mere raising of "some metaphysical doubts as to the material facts." *Matsusita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To the contrary, "the nonmoving party must set forth specific facts, more than mere conclusions and allegations, sufficient to raise a genuine issue for trial; the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Edinburg*, 346 F.3d 752 (7th Cir. 2003). As will be discussed, the Defendants are entitled to an award of summary judgment in their favor.

## STATEMENT OF UNCONTESTED FACTS

On December 14, 2007, Gardenia Lang ("Lang") was present in the Village of Posen operating a vehicle that was owned by her daughter, Monica Williams. (Defendants' Statement of Uncontested Facts ("Facts"), ¶3 & ¶4). At that time, Lang was traveling southbound on San Francisco Avenue approaching its intersection with 147th Street; 147th Street is a four-lane east-west thoroughfare. (Facts, ¶5). The aforementioned intersection is controlled by a stop sign for vehicles approaching from the southerly direction. (Facts, ¶5). As she edged into the

2

intersection, Lang noticed a SUV traveling westbound on 147th Street. (Facts, ¶6). She came to a complete stop before turning right to proceed westbound on 147th Street. (Facts, ¶6). Almost immediately thereafter, Lang noticed a police vehicle with its emergency lights activated to her rear. (Facts, ¶6). Accordingly, Lang pulled into a private parking lot of a shopping plaza located at 147th Street and Sacramento Avenue. (Facts, ¶6). The shopping plaza contains a beauty salon and a supermarket. (Facts, ¶6).

Officer McCree is a Village police officer and the officer who curbed Lang's vehicle. (Facts, ¶2 & ¶7). After following Lang into the shopping plaza, McCree exited his vehicle and approached Lang's automobile to inform her that she was being pulled over for disobeying a stop sign. (Facts, ¶7). After retrieving Lang's driver's license and insurance, he returned to his squad car with that documentation. (Facts, ¶7). McCree accessed Lang's driver's history through his on-board computer and through dispatch. (Facts, ¶7). The search revealed that Lang's driver's license was suspended. (Facts, ¶7). McCree also learned that the vehicle Lang was driving was registered to a Monica Williams. (Facts, ¶7). Lang admits that her license was suspended on December 14, 2007. (Facts, ¶13). McCree returned to Lang's vehicle and advised her that she was to be placed under arrest. (Facts, ¶8). He requested that Lang turn off the vehicle and hand him the keys to the automobile. (Facts, ¶8). Lang, apparently knowing that the car was to be impounded, requested that she be given an opportunity to contact her daughter to remove the vehicle from the parking lot. (Facts, ¶8). McCree refused this request. (Facts, ¶8).

Lang was placed in handcuffs by McCree for transportation to the police department for processing. (Facts, ¶9). After the handcuffs were secured, Lang complained about their tightness. (Facts, ¶9). McCree advised Lang that he was required to handcuff her but warned her not to lean back in the vehicle or the handcuffs could tighten further. (Facts, ¶9). No further conversation was had concerning the handcuffs. (Facts, ¶9). Lang was in handcuffs for approximately twenty-two minutes before being released on her own recognizance. (Facts, ¶9 & ¶10). Before leaving the station, she was issued two citations: disobeying a stop sign (625 ILCS 5/11-1204(b)); and, driving while her driver's license was suspended (625 ILCS 5/6-303). (Facts, ¶10). She characterizes her arrest and the towing the vehicle as unfair. (Facts, ¶14).

3

Lang received no physical or emotional injuries as a result of her encounter with McCree and, consequently, sought no medical treatment. (Facts, ¶14).

After Lang's arrest, Williams' vehicle was impounded by a private reclamation company. (Facts, ¶11). McCree made the decision to impound the vehicle because Lang was the only person in the vehicle and the owner was not on the scene. (Facts, ¶4 & ¶11). Due to the fact that Lang was arrested in public view and on a Friday night, McCree believed that anyone witnessing Lang's arrest could view her absence from the vehicle as an opportunity for vandalism or theft. (Facts ¶11). Impounding the vehicle was an effort to protect Williams' vehicle from those crimes. (Facts, ¶11).

## ARGUMENT

### II.    Fourth Amendment Claims

*The tightness of Lang's handcuffs was not unreasonable as a matter of law; thus, Lang's allegations of excessive force must fail.*

Lang claims that she was subject to excessive force on account of the tightness of the handcuffs that were placed on her during the arrest. Claims of excessive force invoke the Fourth Amendment's prohibition against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394 & 395 (1989). When examining the reasonableness of force employed to accomplish a seizure, a court must examine the totality of circumstances surrounding the encounter. *Edinburg*, 346 F.3d 752 (7th Cir. 2003). To that end, the inquiry into the reasonableness of the force employed is an objective one. *Graham*, 490 U.S. at 399. That is, the "particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Bell v. Irwin*, 321 F.3d 637, 639 (7th Cir. 2003). Put simply, an officer's subjective beliefs or his motivations are irrelevant to a claim for excessive force. *Graham*, 490 U.S. at 397.

The Seventh Circuit Court of Appeals in *Tibbs v. City of Chicago*, 469 F.3d 661 (7th Cir. 2006), explained the limits of an excessive force claim based on overly-tight handcuffs. In *Tibbs*, the court distinguished the facts that it was presented with from those in its earlier decisions of *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) and *Herzog v. Village of Winnetka*,

4

309 F.3d 1041 (7th Cir. 2002). See generally *Tibbs*, 469 F.3d at 665 & 666. Doing so, the panel granted summary judgment for the defendants in that case:

> The record here indicates the following: Tibbs likely suffered some discomfort and pain from handcuffs that Officer Kooistra applied somewhat too tightly; Tibbs complained to Officer Kooistra once about his handcuffs without elaborating on any injury, numbness, or degree of pain; Tibbs was handcuffed for about twenty-five to thirty minutes (from the time of his arrest to his arrival at the lockup facility); he experienced redness on his wrists for less than two days; and he neither sought nor received medical care for any alleged wrist injury.
>
> Tibbs cites no cases in which any court has permitted a plaintiff to reach a jury based on such mild allegations. We agree with the district court that no reasonable jury could find Officer Kooistra's actions were objectively unreasonable. *Tibbs*, 469 F.3d at 666.

The facts in this case are even more benign than those that were presented to the Seventh Circuit in *Tibbs*.

In the instant matter, Lang was placed in handcuffs by McCree to be transported to the police department for processing. (Facts, ¶9). While Lang offered a vague complaint about the tightness of her handcuffs, she did so only once. (Facts, ¶9). Lang was only in handcuffs for 22 minutes and did not expound upon the degree or the particulars of the pain she was suffering. (Facts, ¶9). Further, she suffered no physical injury from the encounter nor did not seek medical care. (Facts, ¶14). No reasonable jury could find that Officer McCree's conduct was unreasonable under the circumstances. *Cusack v. City of Des Plaines*, 2007 WL 2484325, 4 (N.D.Ill. 2007) (summary judgment awarded on an overly-tight handcuff case as the only evidence of misconduct was that the officer applied handcuffs aggressively and refused to loosen upon a detainee's complaint of tightness). McCree is entitled to summary judgment as a matter of law.

*Lang's false arrest claim is barred as a matter of law because McCree had probable cause for her arrest.*

Lang claims that her Fourth Amendment right to be free from unreasonable seizures was violated when she was arrested for driving with a suspended license. Specifically, she claims that it was unreasonable to be arrested for a violation of the Illinois Vehicle Code, 625 ILCS 5/1-100, *et seq.* In order for Lang to prevail on her false arrest claim she must demonstrate that her arresting officer lacked probable cause to arrest. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). The existence of probable cause is an absolute bar to a claim for false arrest under Section 1983. *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007). An officer possesses probable cause when the facts and circumstances within his knowledge are sufficient to warrant a prudent person to believe that the suspect has committed an offense. *Rodriguez*, 509 F.3d at 398. Therefore, probable cause is assessed based upon facts as they would have appeared to a reasonable person in the position of the arresting officer. *Kelley*, 149 F.3d at 646.

In this case, Lang was arrested for driving while her license was suspended (625 ILCS 5/6-303).[4] While Lang admits that she was driving while her license was suspended, she appears to quarrel with the arrest upon the precipitating offense's triviality. But, no matter how innocuous Lang feels her crime, it plays no part in this court's determination of whether her arrest was reasonable. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *Chortek v. City of Milwaukee*, 356 F.3d 740, 745 (7th Cir. 2004) ("Arrest for a minor, non-jailable offense does not violate the Fourth Amendment."). In the instant matter, it is uncontested that Lang was operating the vehicle in violation of the law and that McCree was aware of those facts. McCree had probable cause to arrest Lang as a matter of law. *Williams*, 509 F.3d at 401 (summary judgment appropriate, no violation of Fourth Amendment when officer has probable cause to arrest for minor traffic violation); see also *Covington v. Smith*, 259 Fed.Appx. 871, 875 (7th Cir. 2008). Accordingly, Lang's false arrest claim is barred as a matter of law.

---

[4] Lang was also issued a citation for disobeying a stop sign 625 ILCS 5/11-1204 (b). (Facts, ¶10).

Parenthetically, the fact that Lang claims that she did not disobey a stop sign does not alter the reasonableness of her arrest for driving on a suspended license.

> The exclusionary rule bars evidence obtained from, or as a result of, lawless official acts. That doctrine is not applicable here [in a civil rights action]. As explained in *Townes v. City of New York*, the value of the Fourth Amendment is not served if Plaintiff, who illegally possessed cocaine, is allowed to reap financial benefit from his arrest. Even if Defendants lacked probable cause to stop Plaintiff's vehicle, they certainly had probable cause to arrest him upon discovery of the cocaine.
>
> As found in *Townes*, a 'lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a §1983 claimant.' *Rivera v. Burke*, 2008 WL 345612, 5 (N.D.Ill. 2008) citing *Townes v. City of New York*, 176 F.3d 138, 149 (2nd Cir. 1999)

Thus, even if this court were to find that McCree lacked justification to stop Lang's vehicle for disobeying a stop sign, the evidence obtained from that stop (*i.e.*, suspended driver's license) would nonetheless bar her claim for false arrest.    *Rivera*, 2008 WL 345612, 5 (summary judgment proper, plaintiff's argument that defendants searched vehicle before they had probable cause is irrelevant to false arrest claim).   McCree respectfully request that summary judgment be awarded in his favor and against Lang.

*Lang has no standing to sue based upon the seizure of the vehicle she was driving.*

Lang challenges the seizure of the vehicle that she was driving on December 14, 2007. She claims that the seizure was unreasonable because McCree would not entertain a less intrusive alternative to impoundment.  Principally, Lang has no standing to challenge the seizure of the vehicle she was operating because she does not own the car. *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001) (husband had no standing to challenge the seizure of his wife's horses as he did not own them); cf. *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 & 830 (7th Cir. 1999) (in a procedural due process claim, plaintiff lacked standing to challenge the constitutionality of seizure and disposal of abandoned vehicles where plaintiff did not own an automobile); see also *Nuet v. Guthrie*, 72 Fed.Appx. 468, 469 (7th Cir. 2003) (plaintiff had no

standing to challenge seizure of truck owned by his wife).    On standing alone, summary judgment is appropriate.

Even if this court finds that Lang has standing to challenge the seizure of Williams' vehicle, said seizure was not unreasonable under the circumstances.  As with any claim based on the Fourth Amendment, this court's inquiry focuses on the seizure's reasonableness.    *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996).  A police initiated impoundment is reasonable if it is supported by probable cause, "or if it is in furtherance of 'public safety' or 'community caretaking functions,' such as removing 'disabled or damaged vehicles,' and 'automobiles which violate parking ordinances, and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic.'" *Duguay*, 93 F.3d at 352 (citing *South Dakota v. Opperman*, 428 U.S. 364 (1976).  "An impoundment may be proper under the community caretaking doctrine if the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle, and also if it is necessary to remove the vehicle from an exposed or public location." *Harrington v. Heavey*, 2006 WL 3359388, 5 (N.D.Ill. 2007) (citing *Miranda v. City of Cornelius*, 429 F.3d 858, 865 (9th Cir. 2005).

In this case, it is uncontested that Lang was arrested with no passengers in the vehicle to which she could entrust its speedy and efficient removal. See *Dugay*, 93 F.3d at 353.  It is further uncontested that Lang was not the owner of the vehicle in question. (Facts, ¶4).  If left unattended, the automobile would have been unsupervised on a Friday night in a private parking lot adjacent to major thoroughfare. (Facts, ¶11).  Anyone witnessing Lang's arrest could view her absence from the vehicle as an opportunity for theft or vandalism. (Facts, ¶11).  McCree took these factors into consideration and his choice to impound the vehicle was not unreasonable under community caretaking functions.    *United States v. Griffin*, 729 F.2d 475, 480 (7th Cir. 1984) (impoundment reasonable under community caretaking doctrine to protect unknown owner's vehicle from damage, theft or vandalism); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1477, n. 4 (9th Cir. 1993) (impoundment of arrestee's car from private parking lot "to protect the car from vandalism or theft" was reasonable under the community caretaking function).

8

Notwithstanding, Lang argues that her daughter could have removed the vehicle if she had been allowed to make a phone call. Manifestly, Lang confuses what could have been done with what the Fourth Amendment requires to be done. That is, under the reasonableness standard "the real question is not what 'could have been achieved, but whether the Fourth Amendment *requires* such steps'…The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983) (emphasis in original); see also *Cady v. Dombrowski*, 413 U.S. 433, 447 (1973). Indeed, the United States Supreme Court has held that the Fourth Amendment does not require a police officer to allow an arrestee to arrange for the safekeeping of his property as an alternative to impoundment and an attendant inventory search of a vehicle's contents. *Colorado v. Bertine*, 479 U.S. 367, 373 & 374 (1987). Even if the Fourth Amendment required such burdens to be placed on officers in the field, there is no evidence that McCree was aware that Monica Williams—the vehicle's owner—was Lang's daughter; thus, the impoundment would be reasonable under the circumstances. See *United States v. Ponce*, 8 F.3d 989, 996 (5th Cir. 1994) (impoundment proper; even if driver was entrusted with owner's vehicle, officer was not required to assume that owner would allow driver's girlfriend permission to operate vehicle). In light of the above, McCree respectfully request that summary judgment be awarded in his favor and against the plaintiff.

*As Lang suffered no constitutional violation her Monell claims must fail as a matter of law.*

Lang alleges that her Fourth Amendment rights were violated through the Village failure to properly train McCree. However, as there is no underlying constitutional violation, Lang's claims against the Village must fail as well. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000); *Grossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997); *Thompson v. Boggs*, 33 F.3d 847, 859 n. 11 (7th Cir. 1994). Consequently, summary judgment is appropriate in favor of the Village and against Lang as a matter of law.

9

II.   Illinois State Law Claims

*Plaintiff's negligence claim is an attempt to recover directly under the Fourth Amendment.*

Plaintiff alleges that the Defendants had a duty not to breach her Fourth Amendment rights and breached those rights by effectuating the unreasonable seizure of her and her vehicle. Although the count is titled "negligence" and purports to be based in the State of Illinois common law, it clearly cannot be the case as the Fourth Amendment protects federal rights. That being said, one has to assume that Lang's "negligence" claim is simply a "Trojan horse" for a direct cause of action under the Fourth Amendment. But, there is no direct cause of action under the Fourth Amendment; a plaintiff must avail herself "of the federally enacted statutory mechanism for redressing deprivations of federal rights"—Section 1983. *Davis v. Kirby*, 755 F.Supp. 199, 200 (N.D.Ill. 1990); *Bieneman v. City of Chicago*, 662 F.Supp. 1297, 1299 & 1300 (N.D.Ill. 1987); *Strauss v. City of Chicago*, 614 F.Supp. 9, 10, (N.D.Ill. 1984), aff'd 760 F.2d 765 (7th Cir. 1985). Aside from the claim being duplicative of her previous Section 1983 allegations, no seizure complained of in this case can be considered objectively unreasonable as a matter of law. See *infra* pgs. 4-9. Therefore, summary judgment is proper.

*Lang suffered no emotional injury and therefore may not proceed on her claim of intentional infliction of emotional distress.*

Under Illinois law, a plaintiff may only recover on a claim of intentional infliction of emotional distress if: 1) the defendant's conduct was extreme and outrageous; 2) the emotional distress suffered by plaintiff was severe; and, 3) the defendant knew that severe emotional distress was certain or substantially certain to result from such conduct. *Johnson v. K-Mart Corporation*, 311 Ill.App.3d 573, 580, 723 N.E.2d 1192, 1197 (2000). Further, in order for a plaintiff to survive a motion for summary judgment, there must be an issue of fact concerning all three elements. *Johnson*, 311 Ill.App.3d at 580 & 581, 723 N.E.2d at 1198. Although there are no facts from which to infer knowledge that severe emotional distress was certain or substantially certain to result from Lang's arrest or the impoundment of the vehicle, McCree's conduct was not extreme and outrageous nor was the emotional distress suffered by Lang severe. Consequently, summary judgment should be awarded to the Defendants.

Lang bases her claim of intentional infliction of emotional distress on the grounds that her arrest and the impoundment of the vehicle were unfair.  (Facts, ¶14).  Initially, if this court finds that McCree's conduct was reasonable for Fourth Amendment purposes, it would be incongruous to hold that the same conduct was extreme and outrageous.  *Dean v. City of Worcester*, 924 F.2d 364, 369 (2nd Cir. 1991) (for purposes of I.I.E.D., a defendant's conduct cannot be reasonable and extreme and outrageous at the same time).  That being said, even if Lang was treated unfairly, such trivialities do encompass the type of conduct that Illinois recognizes as extreme and outrageous.  *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill.App.3d 30, 38, 684 N.E.2d 935, 941 & 942 (1997) ("humiliation and worry is not sufficient to give rise to a cause of action" for intentional infliction of emotional distress); see also *Miller v. Equitable Life Assurance Society*, 181 Ill.App.3d 954, 957, 537 N.E.2d 887, 889 (1989) (stress not severe enough to establish claim of emotional distress where conduct complained of was inconsiderate, uncooperative, unprofessional and unfair).  Further, "[t]he emotional distress required to support the cause of action must be so sever that no reasonable person could be expected to endure it."  *Adams*, 292 Ill.App.3d at 38, 684 N.E.2d at 942.  In the instant matter, Lang admits that she suffered no emotional injuries as a result of her encounter nor did she seek any medical care.  (Facts, ¶14).  And, without proof an emotional injury or the severity of the distress suffered (i.e., hospitalization, psychiatric treatment, or medication) she may not proceed on this claim as a matter of law.  *Adams*, 292 Ill.App.3d at 39, 684 N.E.2d at 942.

## CONCLUSION

There are no genuine issues of material fact.  Defendants respectfully request that summary judgment be awarded in their favor and against Lang as a matter of law.

S/ Joseph Cainkar

**RECEIVED**

 Westlaw.

JUN 2 4 2008

625 ILCS 5/13A-112

Page 1

JUDGE SUZANNE B. CONLON
United States District Court

▶

**Effective: January 1, 2003**

West's Smith-Hurd Illinois Compiled Statutes Annotated Currentness
  Chapter 625. Vehicles
    Act 5. Illinois Vehicle Code (Refs & Annos)
      Chapter 13A. Emission Inspection (Refs & Annos)
        → 5/13A-101 to 5/13A-115. §§ 13A-101 to 13A-115. Repealed eff. Jan. 1, 2003

HISTORICAL AND STATUTORY NOTES

Repealed § 13A-101, providing for short title, was derived from P.A. 76-1586, § 13A-101, added by P.A. 83-1477, § 1, and Ill.Rev.Stat.1991, ch. 95 1/2, ¶ 13A-101.

Repealed § 13A-102, relating to definitions, was derived from:

    P.A. 76-1586, § 13A-102, added by P.A. 83-1477, § 1.
    P.A. 84-1422, § 1.
    P.A. 86-1433, § 1.
    Ill.Rev.Stat.1991, ch. 95 1/2, ¶ 13A-102.

Repealed § 13A-103, relating to program, was derived from:

    P.A. 76-1586, § 13A-103, added by P.A. 83-1477, § 1.
    P.A. 86-1433, § 1.
    Ill.Rev.Stat.1991, ch. 95 1/2, ¶ 13A-103.

Repealed § 13A-104, relating to inspections, was derived from:

    P.A. 76-1586, § 13A-104, added by P.A. 83-1477, § 1.
    P.A. 84-1308, Art. III, § 39.
    P.A. 86-1433, § 1.
    Ill.Rev.Stat.1991, ch. 95 1/2, ¶ 13A-104.
    P.A. 88-533, § 15.

P.A. 92-668, § 5, purported to amend § 13A-104, eff. Jan. 1, 2003. As amended by P.A. 92-668, § 13A-104 would have read:

"(a) Every motor vehicle which is owned by a resident of the original inspection area, other than a vehicle which is exempt under subsection (d) or (e), shall be subject to inspection under the program.

"Beginning January 1, 1992, every motor vehicle which is owned by a resident of the new inspection area, other than a vehicle which is exempt under subsection (d) or (e), shall be subject to inspection under the program.

"In accordance with the schedule in subsection (b), the Agency shall assign an inspection month for each vehicle

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Exhibit C* **C**

subject to inspection under the program, and shall send notice thereof to the owner of the vehicle not less than 15 days prior to the beginning of the assigned month. For a vehicle that was not previously subject to inspection, the Agency shall also send an initial emission inspection sticker to the owner of the vehicle. For a vehicle that was previously subject to inspection and for which an initial inspection sticker has already been issued, the month to be assigned by the Agency for that vehicle shall not be earlier than the current assigned month, unless so requested by the owner; if the assigned month is later than the current assigned month, the Agency shall issue a corrected inspection sticker for that vehicle.

"Initial emission inspection stickers shall expire on the last day of the third month following the month assigned by the Agency for the first inspection of the vehicle in accordance with the schedule in subsection (b). Renewal inspection stickers shall expire on the last day of the third month following the month assigned for inspection in the year in which the vehicle's next inspection is required in accordance with the schedule in subsection (b).

"The Agency or its agent may issue a temporary emission inspection sticker for any vehicle subject to inspection which does not have a currently valid emission inspection sticker at the time the Agency is notified by the Secretary of State of its registration by a new owner, and for which an initial emission inspection sticker has already been issued. Such temporary emission inspection sticker shall expire on the last day of the fourth complete calendar month after the date the Agency is notified by the Secretary of State of the registration of the vehicle by the new owner, but not earlier than the end of the second complete calendar year after the vehicle's model year.

"The owner of each vehicle subject to inspection shall obtain an emission inspection sticker for the vehicle in accordance with this subsection. Prior to the expiration of the emission inspection sticker, the owner shall have the vehicle inspected and obtain a renewal emission inspection sticker. A renewal emission inspection sticker shall not be issued more than 5 months prior to the expiration date of the previous inspection sticker.

"(b) Except as provided in subsection (b-5), vehicles subject to inspection shall be assigned inspection months according to the following schedule:

"(1) Vehicles of a model year before 1985 shall be assigned an inspection month in 1991 and annually there- after.

"(2) Vehicles of model year 1985 shall be assigned an inspection month in 1992 and annually thereafter.

"(3) Vehicles of model year 1986 shall be assigned an inspection month in 1991, 1993, and annually thereafter.

"(4) Vehicles of model year 1987 shall be assigned an inspection month in 1992, 1994, and annually thereafter.

"(5) Vehicles of model year 1988 shall be assigned an inspection month in 1991, 1993, 1995 and annually there- after.

"(6) Vehicles of model year 1989 shall be assigned an inspection month in 1992, 1994, 1996, and annually thereafter.

"(7) Vehicles of model year 1990 shall be assigned an inspection month in 1993, 1995, 1997, and annually thereafter.

"(b-5) Beginning July 1, 1994, or as soon as practicable thereafter, vehicles shall be assigned an inspection month and inspected every 2 years on a schedule that begins in the second calendar year after the vehicle model

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

year. A vehicle may be assigned an inspection month and inspected on a schedule other than according to this subsection when a new owner acquires a vehicle that should have been, but was not, in compliance with this Act at the time the vehicle was acquired by the new owner.

"(c) The owner of every vehicle subject to inspection shall have the vehicle inspected and obtain and display thereon a valid unexpired emission inspection sticker in the manner specified by the Agency.

"Any person who violates this subsection (c) shall be guilty of a petty offense, except that a third or subsequent violation within one year shall be a Class C misdemeanor. The fine imposed for a violation of this subsection shall be not less than $50 if the violation occurred within 60 days following the date by which a new or renewal emission inspection sticker was required to be obtained for the vehicle, and not less than $300 if the violation occurred more than 60 days after such date.

"(d) The following vehicles are not subject to inspection:

"(1) vehicles not subject to registration under Article IV of Chapter 3 of The Illinois Vehicle Code, other than vehicles owned by the federal government;

"(2) motorcycles, motor driven cycles and motorized pedalcycles;

"(3) farm vehicles and implements of husbandry;

"(4) implements of warfare owned by the State or federal government;

"(5) antique vehicles, custom vehicles, street rods, and vehicles of model year 1967 or before;

"(6) vehicles operated exclusively for parade or ceremonial purposes by any veterans, fraternal or civic organization, organized on a not-for-profit basis;

"(7) vehicles for which a Junking Certificate has been issued by the Secretary of State pursuant to Section 3-117 of The Illinois Vehicle Code;

"(8) diesel powered vehicles, and vehicles which are powered exclusively by electricity;

"(9) vehicles operated exclusively in organized amateur or professional sporting activities, as defined in the Environmental Protection Act;

"(10) vehicles which were purchased new by the current owner less than 24 months prior to the assigned test month.

"The Agency may issue temporary or permanent exemption stickers, respectively, for vehicles temporarily or permanently exempt from inspection under this subsection (d); however, the owner of an exempt vehicle need not obtain or display an exemption sticker.

"(e) Pursuant to such criteria as the Agency may adopt, a motor vehicle may be exempted from the inspection requirements of this Section by the Agency on the basis of an Agency determination that such vehicle is owned and operated by a corporation or other business entity, and that the situs of such vehicle is located, and it is primarily used, outside of the affected counties. The Agency may issue an annual exemption sticker without inspection for any vehicle exempted from inspection under this subsection (e).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"(f) Any owner or lessee of a fleet of 15 or more motor vehicles which are subject to inspection under this Section may apply to the Agency for a permit to establish and operate a Private Official Inspection Station."

Repealed § 13A-105, relating to rules and standards, was derived from

> P.A. 76-1586, § 13A-105, added by P.A. 83-1477, § 1.
> P.A. 86-1433, § 1.
> Ill.Rev.Stat.1991, ch. 95 1/2, ¶ 13A-105.

Repealed § 13A-106, relating to performance of inspections, was derived from:

> P.A. 76-1586, § 13A-106, added by P.A. 83-1477, § 1.
> P.A. 86-1433, § 1.
> Ill.Rev.Stat.1991, ch. 95 1/2, ¶ 13A-106.

Repealed § 13A-107, relating to inquiries, was derived from P.A. 76-1586, § 13A-107, added by P.A. 83-1477, § 1, and Ill.Rev.Stat.1991, ch. 95 1/2, ¶ 13A-107.

Repealed § 13A-108, relating to grievance procedure, was derived from:

> P.A. 76-1586, § 13A-108, added by P.A. 83-1477, § 1.
> P.A. 88-533, § 15.
> Ill.Rev.Stat.1991, ch. 95 1/2, ¶ 13A-108.

Repealed § 13A-109, relating to contracts, was derived from:

> P.A. 76-1586, § 13A-109, added by P.A. 83-1477, § 1.
> P.A. 86-1433, § 2.
> P.A. 88-533, § 15.
> Ill.Rev.Stat.1991, ch. 95 1/2, ¶ 13A-109.

Repealed § 13A-110, relating to special official inspection stations, was derived from P.A. 76-1586, § 13A-110, added by P.A. 83-1477, § 1, and Ill.Rev.Stat.1991, ch. 95 1/2, ¶ 13A-110.

Repealed § 13A-111, relating to costs, was derived from:

> P.A. 76-1586, § 13A-111, added by P.A. 83-1477, § 1.
> P.A. 86-1433, § 2.
> P.A. 88-533, § 15.
> Ill.Rev.Stat.1991, ch. 95 1/2, ¶ 13A-111.

Repealed § 13A-112, relating to enforcement, was derived from:

> P.A. 76-1586, § 13A-112, added by P.A. 83-1477, § 1.
> P.A. 88-533, § 15.
> Ill.Rev.Stat.1991, ch. 95 1/2, ¶ 13A-112.

Repealed § 13A-113, relating to other offenses, was derived from P.A. 76-1586, § 13A-113, added by P.A. 83-1477, § 1, and Ill.Rev.Stat.1991, ch. 95 1/2, ¶ 13A-113.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Repealed § 13A-114, relating to home rule, was derived from P.A. 76-1586, § 13A-114, added by P.A. 83-1477, § 1, and Ill.Rev.Stat.1991, ch. 95 1/2, ¶ 13A-114.

Repealed § 13A-115, relating to effectiveness, was derived from:

> P.A. 76-1586, § 13A-115, added by P.A. 83-1477, § 1.
> P.A. 86-1433, § 2.
> P.A. 88-533, § 15.
> Ill.Rev.Stat.1991, ch. 95 1/2, ¶ 13A-115.
> P.A. 92-682, § 5.

P.A. 83-1477, § 3, which enacted Chapter 13A, provided:

"The General Assembly hereby finds and declares that under the provisions of subsection (b) of Section 3 of The State Mandates Act, no reimbursement by the State shall be required for the implementation of this Act, because it is enacted to comply with a federal mandate imposed under the federal Clean Air Act."

625 I.L.C.S. 5/13A-112, IL ST CH 625 § 5/13A-112
Current through P.A. 95-722 of the 2008 Reg. Sess.

(C) 2008 Thomson Reuters/West

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

625 ILCS 5/6-303

**RECEIVED**

JUN 2 4 2008

JUDGE SUZANNE B. CONLON
United States District Court

Formerly cited as IL ST CH 95 1/2 ¶ 6-303

West's Smith-Hurd Illinois Compiled Statutes Annotated Currentness
  Chapter 625. Vehicles
    Act 5. Illinois Vehicle Code (Refs & Annos)
      ◥▉ Chapter 6. The Illinois Driver Licensing Law (Refs & Annos)
        ◥▉ Article III. Violation of License Provisions
          ➡**5/6-303. Driving while driver's license, permit or privilege to operate a motor vehicle is suspended or revoked**

<Text of section as amended by P.A. 95-27 and P.A. 95-578 effective until January 1, 2009>

§ 6-303. Driving while driver's license, permit or privilege to operate a motor vehicle is suspended or revoked.

(a) Any person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license, permit or privilege to do so or the privilege to obtain a driver's license or permit is revoked or suspended as provided by this Code or the law of another state, except as may be specifically allowed by a judicial driving permit, family financial responsibility driving permit, probationary license to drive, or a restricted driving permit issued pursuant to this Code or under the law of another state, shall be guilty of a Class A misdemeanor.

(b) The Secretary of State upon receiving a report of the conviction of any violation indicating a person was operating a motor vehicle during the time when said person's driver's license, permit or privilege was suspended by the Secretary, by the appropriate authority of another state, or pursuant to Section 11-501.1; except as may be specifically allowed by a probationary license to drive, judicial driving permit or restricted driving permit issued pursuant to this Code or the law of another state; shall extend the suspension for the same period of time as the originally imposed suspension; however, if the period of suspension has then expired, the Secretary shall be authorized to suspend said person's driving privileges for the same period of time as the originally imposed suspension.

(b-3) When the Secretary of State receives a report of a conviction of any violation indicating that a vehicle was operated during the time when the person's driver's license, permit or privilege was revoked, except as may be allowed by a restricted driving permit issued pursuant to this Code or the law of another state, the Secretary shall not issue a driver's license to that person for an additional period of one year from the date of such conviction.

(b-5) When the Secretary of State receives a report of a conviction of any violation indicating a person was operating a motor vehicle that was not equipped with an ignition interlock device during a time when the person was prohibited from operating a motor vehicle not equipped with such a device, the Secretary shall not issue a driver's license to that person for an additional period of one year from the date of the conviction.

(c) Any person convicted of violating this Section shall serve a minimum term of imprisonment of 10 consecutive days or 30 days of community service when the person's driving privilege was revoked or suspended as a result of:

  (1) a violation of Section 11-501 of this Code or a similar provision of a local ordinance relating to the offense of operating or being in physical control of a vehicle while under the influence of alcohol, any other drug or any combination thereof; or

  (2) a violation of paragraph (b) of Section 11-401 of this Code or a similar provision of a local

Exh. 6 **D**

ordinance relating to the offense of leaving the scene of a motor vehicle accident involving personal injury or death; or

(3) a violation of Section 9-3 of the Criminal Code of 1961, as amended, [FN1] relating to the offense of reckless homicide; or

(4) a statutory summary suspension under Section 11-501.1 of this Code.

Such sentence of imprisonment or community service shall not be subject to suspension in order to reduce such sentence.

(c-1) Except as provided in subsection (d), any person convicted of a second violation of this Section shall be ordered by the court to serve a minimum of 100 hours of community service.

(c-2) In addition to other penalties imposed under this Section, the court may impose on any person convicted a fourth time of violating this Section any of the following:

(1) Seizure of the license plates of the person's vehicle.

(2) Immobilization of the person's vehicle for a period of time to be determined by the court.

(d) Any person convicted of a second violation of this Section shall be guilty of a Class 4 felony and shall serve a minimum term of imprisonment of 30 days or 300 hours of community service, as determined by the court, if the revocation or suspension was for a violation of Section 11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, a violation of Section 9-3 of the Criminal Code of 1961, relating to the offense of reckless homicide, or a similar out-of-state offense, or a statutory summary suspension under Section 11-501.1 of this Code.

(d-1) Except as provided in subsection (d-2) and subsection (d-3), any person convicted of a third or subsequent violation of this Section shall serve a minimum term of imprisonment of 30 days or 300 hours of community service, as determined by the court.

(d-2) Any person convicted of a third violation of this Section is guilty of a Class 4 felony and must serve a minimum term of imprisonment of 30 days if the revocation or suspension was for a violation of Section 11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, a violation of Section 9-3 of the Criminal Code of 1961, relating to the offense of reckless homicide, or a similar out-of-state offense, or a statutory summary suspension under Section 11-501.1 of this Code.

(d-3) Any person convicted of a fourth, fifth, sixth, seventh, eighth, or ninth violation of this Section is guilty of a Class 4 felony and must serve a minimum term of imprisonment of 180 days if the revocation or suspension was for a violation of Section 11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, a violation of Section 9-3 of the Criminal Code of 1961, relating to the offense of reckless homicide, or a similar out-of-state offense, or a statutory summary suspension under Section 11-501.1 of this Code.

(d-4) Any person convicted of a tenth, eleventh, twelfth, thirteenth, or fourteenth violation of this Section is guilty of a Class 3 felony, and is not eligible for probation or conditional discharge, if the revocation or suspension was for a violation of Section 11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, a violation of Section 9-3 of the Criminal Code of 1961, relating to the offense of reckless homicide, or a similar out-of-state offense, or a statutory summary suspension under Section 11-501.1 of this Code.

(d-5) Any person convicted of a fifteenth or subsequent violation of this Section is guilty of a Class 2 felony, and is not eligible for probation or conditional discharge, if the revocation or suspension was for a violation of Section 11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, a violation of Section 9-3 of the Criminal Code of 1961, relating to the offense of reckless homicide, or a similar out-of-state offense, or a statutory summary suspension

under Section 11-501.1 of this Code.

(e) Any person in violation of this Section who is also in violation of Section 7-601 of this Code relating to mandatory insurance requirements, in addition to other penalties imposed under this Section, shall have his or her motor vehicle immediately impounded by the arresting law enforcement officer. The motor vehicle may be released to any licensed driver upon a showing of proof of insurance for the vehicle that was impounded and the notarized written consent for the release by the vehicle owner.

(f) For any prosecution under this Section, a certified copy of the driving abstract of the defendant shall be admitted as proof of any prior conviction.

(g) The motor vehicle used in a violation of this Section is subject to seizure and forfeiture as provided in Sections 36-1 and 36-2 of the Criminal Code of 1961 if the person's driving privilege was revoked or suspended as a result of a violation listed in paragraph (1), (2), or (3) of subsection (c) of this Section or as a result of a summary suspension as provided in paragraph (4) of subsection (c) of this Section.

P.A. 76-1586, § 6-303, eff. July 1, 1970. Amended by P.A. 77-2720, § 1, eff. Jan. 1, 1973; P.A. 80-1462, § 1, eff. Jan. 1, 1979; P.A. 83-206, § 2, eff. Jan. 1, 1984; P.A. 84-272, § 7, eff. Jan. 1, 1986; P.A. 84-1394, § 5, eff. Sept. 18, 1986; P.A. 88-383, § 5, eff. Jan. 1, 1994; P.A. 88-680, Art. 20, § 20-900, eff. Jan. 1, 1995; P.A. 89-8, Art. 1, § 1-5, eff. March 21, 1995; P.A. 89-92, § 10, eff. July 1, 1996; P.A. 89-156, § 5, eff. Jan. 1, 1996; P.A. 89-626, Art. 2, § 2-66, eff. Aug. 9, 1996; P.A. 90-400, § 5, eff. Aug. 15, 1997; P.A. 90-738, § 5, eff. Jan. 1, 1999; Re-enacted by P.A. 91-692, Art. 20, § 20-900, eff. April 13, 2000. Amended by P.A. 92-340, § 5, eff. Aug. 10, 2001; P.A. 92-688, § 5, eff. July 16, 2002; P.A. 94-112, § 5, eff. Jan. 1, 2006; P.A. 95-27, § 5, eff. Jan. 1, 2008; P.A. 95-578, § 5, eff. June 1, 2008.

**Formerly** Ill.Rev.Stat.1991, ch. 95 1/2 , ¶ 6-303.

[FN1] 720 ILCS 5/9-3.

<For text of section as amended by P.A. 95-377 and P.A. 95-578, effective January 1, 2008, see 625 ILCS 5/6-303, post>

<For text of section as amended by P.A. 95-27, P.A. 95-400 and P.A. 95-578, effective January 1, 2009, see 625 ILCS 5/6-303, post>

<For text of section as amended by P.A. 95-377, P.A. 95-400 and P.A. 95-578, effective January 1, 2009, see 625 ILCS 5/6-303, post>

<For final legislative action of the 2007 session of the 95th General Assembly, see 625 ILCS 5/6-303, post>

SOURCE COMMENT

Former section 30b of the 1919 Motor Vehicle Law prohibited driving after an operator's or chauffeur's license had been revoked. Former section 30g of the 1919 Motor Vehicle Law provided: "Any person whose operator's or chauffeur's license or permit, or driving privilege as a non-resident, had been canceled or revoked as provided in this Act, and who shall drive any motor vehicle upon the public highways of this State while such license or privilege is canceled or revoked, shall be guilty of a misdemeanor and upon conviction shall be punished by imprisonment in the county jail for not less than five (5) days nor more than three (3) months and there may be imposed in addition thereto a fine of not more than five hundred dollars ($500.00)."

Provisions comparable to section 6-303 of the Motor Vehicle Law of 1957 are found in Chapter 6 of the Uniform Vehicle Code prepared by the National Committee on Uniform Traffic Laws and

Ordinances.

HISTORICAL AND STATUTORY NOTES

The amendment by P.A. 77-2720 was necessary to conform penalties under this section with the Unified Corrections Code.

P.A. 80-1462 deleted "and shall be imprisoned for not less than 7 days" following "misdemeanor" in subd. (a).

P.A. 83-206 inserted "driver's" preceding "license", substituted "Code" or "law" for "Act" and made other grammatical changes throughout subds. (a) and (b); in addition, in subd. (a), inserted "or is in actual physical control of"; following "permit", deleted "under this Act"; inserted "specifically"; in subd. (b), as it read prior to the amendment by P.A. 84-1394, following "charge of driving a", inserted "motor"; substituted "such person's driver's" for "the"; substituted "to operate a motor vehicle" for "of such person"; and added subd. (c).

P.A. 84-272 inserted subd. (d).

P.A. 84-1394, which incorporated the amendment by P.A. 84-272, in subd. (a), inserted "JDP, probationary license to drive or a"; rewrote subd. (b), which prior thereto provided:

"The Secretary of State upon receiving a report of the conviction of any person under this Section upon a charge of driving a motor vehicle while such person's driver's license, permit or privilege to operate a motor vehicle was suspended, except as may be allowed by a restricted driving permit issued under this Code; or upon receiving a report of the conviction of any person of any violation indicating said person was operating a motor vehicle during the time when said person's driver's license, permit or privilege was suspended; shall extend the period of such suspension for an additional like period, and if the period of suspension has then expired, the Secretary of State shall be authorized to suspend said person's driver's license, permit or privilege for the same period of time as the suspension which had expired, and if the conviction was upon a charge of driving while a driver's license, permit or privilege was revoked, except as may be allowed by a restricted driving permit issued under this Code, or if the conviction was upon a charge which indicated that a vehicle was operated during the time when the driver's license, permit or privilege of said person was revoked, the Secretary of State shall not issue a driver's license for an additional period of 1 year from the date of conviction if such conviction was obtained after the date such person would have been entitled to apply for a new driver's license.";

In subd. (c)(3), in the first paragraph, deleted from the end "in which the cause of death consists of the driving of a motor vehicle"; added a second paragraph regarding suspension of sentence; in subd. (d), deleted a former second paragraph which provided:

"Such sentence of imprisonment or community service shall not be subject to suspension in order to reduce such sentence.";

and made other non-substantive changes.

P.A. 88-383 added subsec. (e) relating to vehicle impoundment where violators are also in violation of mandatory insurance requirements.

P.A. 88-680, in the subsection providing the penalty for violating this Section, inserted "or suspended or restricted under the authority of a restricted driving permit or judicial driving permit"; added the paragraph relating to a statutory summary suspension under Section 11-501.1; and in the subsection relating to a second or subsequent violation of this Section, added the phrase referring to statutory summary suspension under Section 11-501.1.

P.A. 88-680 incorporated the amendment by P.A. 88-383.

The Supreme Court of Illinois held that P.A. 88-680 violated the single-subject rule of the Illinois Constitution in the case of People v. Cervantes, 1999, 243 Ill.Dec. 233, 189 Ill.2d 80, 723 N.E.2d 265; P.A. 91-692 re-enacted this section as contained in P.A. 88-680, including subsequent amendments in order "to remove any question as to the validity or content of those provisions."

P.A. 89-8, in the introductory paragraph of subsec. (c), deleted "or restricted under the authority of a restricted driving permit or judicial driving permit" preceding "as a result of".

P.A. 89-92, in subsec. (a), substituted "judicial driving permit, family financial responsibility driving permit" for "JDP" and made a nonsubstantive change.

P.A. 89-92 incorporated the amendment by P.A. 89-8.

P.A. 89-156, in subsec. (a), substituted "the law of any other state" for "any other law" and inserted "or the law of another state"; in subsec. (b), inserted ", by the appropriate authority of another state," and "or the law of another state" in two places; in subsec. (d), inserted "or a similar out-of-state offense," in two places and deleted "as amended," preceding "relating to".

P.A. 89-626, Article 2, of the First 1996 General Revisory Act, resolved multiple actions in the 89th General Assembly and made certain technical corrections in P.A. 89-1 through P.A. 89-443.

P.A. 90-400, in subsec. (d), added the second sentence.

P.A. 90-738 moved the last sentence in subsec. (d) to create subsec. (f) relating to certified copies of driving abstracts being admissible as proof of prior convictions.

P.A. 90-738 incorporated the amendment by P.A. 90-400.

Section 1 of P.A. 91-692, approved and eff. April 13, 2000, provides:

"Purpose.

"(1) The General Assembly finds and declares that:

"(i) Public Act 88-680, effective January 1, 1995, contained provisions amending the Illinois Vehicle Code. Public Act 88-680 also contained other provisions.

"(ii) In addition, Public Act 88-680 was entitled "AN ACT to create a Safe Neighborhoods Law". (A) Article 5 was entitled JUVENILE JUSTICE and amended the Juvenile Court Act of 1987. (B) Article 15 was entitled GANGS and amended various provisions of the Criminal Code of 1961 and the Unified Code of Corrections. (C) Article 20 was entitled ALCOHOL ABUSE and amended various provisions of the Illinois Vehicle Code. (D) Article 25 was entitled DRUG ABUSE and amended the Cannabis Control Act and the Illinois Controlled Substances Act. (E) Article 30 was entitled FIREARMS and amended the Criminal Code of 1961 and the Code of Criminal Procedure of 1963. (F) Article 35 amended the Criminal Code of 1961, the Rights of Crime Victims and Witnesses Act, and the Unified Code of Corrections. (G) Article 40 amended the Criminal Code of 1961 to increase the penalty for compelling organization membership of persons. (H) Article 45 created the Secure Residential Youth Care Facility Licensing Act and amended the State Finance Act, the Juvenile Court Act of 1987, the Unified Code of Corrections, and the Private Correctional Facility Moratorium Act. (I) Article 50 amended the WIC Vendor Management Act, the Firearm Owners Identification Card Act, the Juvenile Court Act of 1987, the Criminal Code of 1961, the Wrongs to Children Act, and the Unified Code of Corrections.

"(iii) On December 2, 1999, the Illinois Supreme Court, in People v. Cervantes, Docket No. 87229, ruled that Public Act 88-680 violates the single subject clause of the Illinois Constitution (Article IV, Section 8 (d)) and was unconstitutional in its entirety.

"(iv) The provisions of Public Act 88-680 amending the Illinois Vehicle Code are of vital concern to the people of this State and legislative action concerning those provisions of Public Act 88-680 is

necessary.

"(2) It is the purpose of this Act to re-enact the provisions of Public Act 88-680 amending the Illinois Vehicle Code, including subsequent amendments. This re-enactment is intended to remove any question as to the validity or content of those provisions.

"(3) This Act re-enacts various provisions of Public Act 88-680 amending the Illinois Vehicle Code, including subsequent amendments, to remove any question as to the validity or content of those provisions; it is not intended to supersede any other Public Act that amends the text of the Sections as set forth in this Act. The material is shown as existing text (i.e., without underscoring)."

P.A. 92-340, in subsec. (c), in the first sentence, substituted "10" for "7"; inserted subsecs. (c-1) and (c-2); in subsec. (d), deleted "or subsequent" preceding "violation of this Section"; inserted "and shall serve a minimum term of imprisonment of 30 days or 300 hours of community service, as determined by the court,"; deleted "original" preceding "revocation"; and inserted subsecs. (d-1), (d-2) and (d-3).

P.A. 92-688, § 5, added subsec. (g).

P.A. 92-688 incorporated the amendment by P.A. 92-340.

P.A. 94-112, § 5, in subsec. (d-3), substituted "a fourth, fifth, sixth, seventh, eighth, or ninth violation" for "a fourth or subsequent violation"; and added subsecs. (d-4) and (d-5).

P.A. 95-27, § 5, at the end of the first paragraph of subsec. (b), deleted ".; and if the"; redesignated and rewrote subsec. (b) as subsecs. (b) and (b-3); prior thereto, subsec. (b) read:

"(b) The Secretary of State upon receiving a report of the conviction of any violation indicating a person was operating a motor vehicle during the time when said person's driver's license, permit or privilege was suspended by the Secretary, by the appropriate authority of another state, or pursuant to Section 11-501.1; except as may be specifically allowed by a probationary license to drive, judicial driving permit or restricted driving permit issued pursuant to this Code or the law of another state; shall extend the suspension for the same period of time as the originally imposed suspension; however, if the period of suspension has then expired, the Secretary shall be authorized to suspend said person's driving privileges for the same period of time as the originally imposed suspension; and if the conviction was upon a charge which indicated that a vehicle was operated during the time when the person's driver's license, permit or privilege was revoked; except as may be allowed by a restricted driving permit issued pursuant to this Code or the law of another state; the Secretary shall not issue a driver's license for an additional period of one year from the date of such conviction indicating such person was operating a vehicle during such period of revocation.";

and added subsec. (b-5).

P.A. 95-578, § 5, purported to amend this section, but no change was made.

See 5 ILCS 70/6 as to the effect of (1) more than one amendment of a section at the same session of the General Assembly or (2) two or more acts relating to the same subject matter enacted by the same General Assembly.

Prior Laws:

Laws 1953, p. 476, § 41.

Ill.Rev.Stat.1955, ch. 95 1/2 , § 73.41.

Laws 1957, p. 2706, § 6-303.

Laws 1963, p. 2580, § 1.

Laws 1967, p. 2729, § 1.

Ill.Rev.Stat.1967, ch. 95 1/2 , § 6-303.

Laws 1967, p. 3109, § 1, adding § 6A-303.

Ill.Rev.Stat.1967, ch. 95 1/2 , § 6A-303.

625 I.L.C.S. 5/6-303, IL ST CH 625 § 5/6-303

Current through P.A. 95-722 of the 2008 Reg. Sess.

(C) 2008 Thomson Reuters/West
END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

◀ Doc 1 of 4 ▶

Tools  Go

## REPORT OF COURT DISPOSITION
### (Do not Report Court Supervisions on this Form)
### OFFENSE INVOLVING MOTOR VEHICLE OPERATION

Circuit Court, Cook County,        SIXTH  Municipal District
☐ Initial Report        ☒ Amended or Corrected Report    Date 05/30/08

| Driver's License Number | | Licensing State |
| --- | --- | --- |
| L52028164737 | | IL |

| Full Name   Last | First | Middle |
| --- | --- | --- |
| LANG | GARDENIA | A |

| Street | | County |
| --- | --- | --- |
| 16344 LAWNDALE AVE | | |

| City | State | Zip |
| --- | --- | --- |
| MARKHAM | IL | 60428 |

| CDL | Classification | Sex | Date of Birth | Month | Day | Year |
| --- | --- | --- | --- | --- | --- | --- |
| N | | F | | | 05/13/64 | |

*To be completed for mandatory insurance offense or if operating a commercial motor vehicle*

| Plate Number | Licensing State | Registration Year | Vehicle Make | Vehicle Year |
| --- | --- | --- | --- | --- |
| 3284997 | IL | 2008 | FORD | 2005 |

Case No./Docket Number 07TRYM118823    Ticket Number YM118823

Arrest Date 12/14/07    Conviction/Disposition Date 01/14/08

Original Charge: DISREGARD STOP SIGN

Chapter 625    Section 11120    Paragraph 4B

☒ Illinois Vehicle Code    ☐ Local Ordinance    ☐ Illinois Compiled Statutes

ACCIDENT: ☐ Yes ☐ Personal Injury    OPERATING: ☐ Commercial Motor Vehicle
☒ No ☐ Fatality        ☐ Placarded Haz.Mat.Vehicle
☐ Property Damage

FINAL    ☐ Guilty    ☐ Not Guilty    ☐ Forfeiture    ☒ Stricken W/Leave (SOL
DISPOSITION:    ☐ Exparte ☐ Vacated    ☐ Dismissed    ☐ Nolle Prosequi-
(Mark One Box Only)    ☐ Supervision Revoked    ☐ Conditional Discharge(Judgement of Guilty)

Charge or Disposition Amended to:_____
Chapter_____ Section_____ Paragraph_____

☐ Illinois Vehicle Code    ☐ Local Ordinance    ☐ Illinois Compiled Statutes

Defendant referred to remedial or rehabilitative program    ☐ Yes    ☐ No

TA 55-07    ☐ 11-501 Driving Under the Influence
(If disposition is GUILTY, also mark appropriate box in DISPOSITION SECTION)

I hereby certify that the information on this Report of Court Disposition
is a true abstract of this court, as required by the Illinois Vehicle Code.

_____    05/30/08
Signature of Judge or Clerk > ELIZABETH A POWELL    Date

MAIL TO:
Secretary of State
Driver Services Department
2701 S. Dirksen Parkway
Springfield, IL 62723

MOTORIST'S RECEIPT

Exhib.7 E

# REPORT OF COURT DISPOSITION
(Do not Report Court Supervisions on this Form)
## OFFENSE INVOLVING MOTOR VEHICLE OPERATION

Circuit Court, Cook County,       SIXTH Municipal District
☐ Initial Report   ☒ Amended or Corrected Report   Date 05/30/08

| Driver's License Number | | Licensing State | |
|---|---|---|---|
| L52028164737 | | IL | |

| Full Name   Last | First | Middle |
|---|---|---|
| LANG | GARDENIA | A |

| Street | County |
|---|---|
| 16344 LAWNDALE AVE | |

| City | State | Zip |
|---|---|---|
| MARKHAM | IL | 60428 |

| CDL | Classification | Sex | Date of Birth | Month  Day  Year |
|---|---|---|---|---|
| N | | F | | 05/13/64 |

*To be completed for mandatory insurance offense or if operating a commercial motor vehicle*

| Plate Number | Licensing State | Registration Year | Vehicle Make | Vehicle Year |
|---|---|---|---|---|
| 3284997 | IL | 2008 | FORD | 2005 |

Case No./Docket Number 07TRYM118824    Ticket Number YM118824

Arrest Date 12/14/07    Conviction/Disposition Date 01/14/08

Original Charge: DRIVE ON SUSP OR REVOKED LICEN

Chapter 625    Section 63030    Paragraph 00

☒ Illinois Vehicle Code   ☐ Local Ordinance   ☐ Illinois Compiled Statutes

ACCIDENT: ☐ Yes ☐ Personal Injury   OPERATING: ☐ Commercial Motor Vehicle
☒ No ☐ Fatality   ☐ Placarded Haz.Mat.Vehicle
☐ Property Damage

FINAL DISPOSITION: (Mark One Box Only)
☐ Guilty ☐ Not Guilty ☐ Forfeiture ☒ Stricken W/Leave (SOL)
☐ Exparte ☐ Vacated ☐ Dismissed ☐ Nolle Prosequi-
☐ Supervision Revoked ☐ Conditional Discharge(Judgement of Guilty)

Charge or Disposition Amended to:_____
Chapter_____ Section_____ Paragraph_____

☐ Illinois Vehicle Code   ☐ Local Ordinance   ☐ Illinois Compiled Statutes

Defendant referred to remedial or rehabilitative program   ☐ Yes   ☐ No

TA 55-07 ☐ 11-501 Driving Under the Influence
(If disposition is GUILTY, also mark appropriate box in DISPOSITION SECTION)

I hereby certify that the information on this Report of Court Disposition
is a true abstract of this court, as required by the Illinois Vehicle Code.

Signature of Judge or Clerk -> ELIZABETH A POWELL       05/30/08
Date

MAIL TO:
   Secretary of State
   Driver Services Department
   2701 S. Dirksen Parkway
   Springfield, IL 62723

Exhibit F

MOTORIST'S RECEIPT