**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GARDENIA LANG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 7274 |
| | ) | |
| CITY OF POSEN, POLICE DEPARTMENT OF | ) | Judge Suzanne B. Conlon |
| POSEN, POLICE OFFICER V. McLINE | ) | |
| (badge #17), CHIEF OF POLICE OF THE POSEN | ) | |
| POLICE DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Principally, this court should note that Lang filed a cross-motion for summary judgment on June 24, 2008. However, this court's dispositive motion deadline was May 30, 2008. Consequently, Lang's motion should be stricken. Secondly, while Lang complains about the substance of the certificates of service attached to Defendants' documents, Lang does not even contend that she did not receive those documents. Rightfully so; all of the documents were served on Lang *via* U.S. Mail when courtesy copies were delivered to the court. Verily, one would wonder how Lang could address the Defendants' arguments with such specificity absent service. Finally, Lang has failed to file a response the Defendants' statement of uncontested facts. L.R. 56.1(b)(3)(B). Consequently, the Defendants' version of the facts should be deemed admitted. *Schott v. Bristoll-Myeres Squibb Co.,* 403 F.3d 940, 944 (2005).

**ARGUMENT**

II.   Fourth Amendment Claims

Lang attempts to amend her complaint (by argument) in response to the Village's motion for summary judgment. She claims that not only was her arrest unreasonable, but her initial

seizure violated her constitutional rights as well. However, even the most liberal reading of Lang's first amended complaint limits her claim to one sounding in false arrest:

> 22. [T]he officers decision to arrest the plaintiff was an abuse of discretionary powers, because the plaintiff presented no threat to the public or the officer.
> 23. It is well settled that because an arrest is a seizure of the person, individuals are protected from unreasonable arrests.
> 24. [G]enerally a citation for driving under a suspended license, for an emissions violation, is sufficient.
> 25. [U]nder the totality of the circumstances, the officer's decision to arrest the plaintiff was unreasonable and a violation of the Fourth Amendment. (Complaint).

Since the Defendants have already moved for summary judgment on Lang's first amended complaint, it would be fundamentally unfair to allow this newly-asserted theory to preclude summary judgment. Cf. *Feldman v. American Memorial Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir. 1999) (denial of leave to amend complaint due to prejudice proper; parties on the eve of summary judgment proceedings). Had the theory even remotely manifested itself in the context now proposed the Defendants would have addressed it, as summary judgment would have been appropriate nonetheless. A brief argument to that effect is supplied below to demonstrate the lawfulness of the traffic stop.

***Lang's initial seizure, brought about through a traffic stop, was not unreasonable because it was supported by "arguable" if not "actual" probable cause.***

A traffic stop is a seizure for purposes of the Fourth Amendment. *California v. Brendlin*, 127 S.Ct. 2400, 2406 (2008). A traffic stop is reasonable when an officer has probable cause to believe that a traffic violation has occurred. *Phelan v. Village of Lyons*, --- F.3d ---, ---, 2008 WL 2550738, *2 (7th Cir. 2008); see also, *Whren v. U.S.*, 517 U.S. 809 & 810 (19996). An officer has probable cause if, at the time of the seizure, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person in believing that a suspect is committing or has committed an offense. *Quinlan v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999); *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2001) (probable cause demands even less than probability). To determine if probable cause exists, a court should ask whether the officer

2

acted reasonably, not whether another reasonable, or more reasonable, interpretation of the events can be constructed. *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). Finally, a determination of whether probable cause exists may be decided by the court as a matter of law if the facts supporting the determination are not in dispute. *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993).

Under §11-1204 of the Illinois Vehicle Code, 625 ILCS 5/1-100 *et seq.*, it is not only a violation to fail to stop completely, but to fail to stop *before* the crosswalk, stop line or, in the absence of those markings, "at the point nearest the intersection roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection." 625 ILCS 5/11-1204. McCree witnessed the following, which led to Lang being pulled over:

> I witnessed the Ford slowing but failing to stop before the stop sign that controlled the intersection. While the intersection has no crosswalk or stop line, vehicles stopping at the stop sign are able to view approaching traffic on 147th Street before entering the intersection. (Facts, ¶6).

Therefore, although Lang contends that she came to a complete stop, a fact this court must accept, it is undisputed that even if she did stop, she failed to do so before the stop sign (Facts, 6); the point where Lang would have had a view of approaching traffic before entering the intersection. 625 ILCS 5/11-1204. In this situation, and based upon the facts known to McCree, a reasonable officer would have had probable cause to stop Lang's vehicle for disregarding the stop sign. *Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007). Thus, Lang's seizure was not unreasonable as a matter of law.

Even if actual probable cause was lacking, McCree would be entitled to qualified immunity. Qualified immunity shields governmental officials from liability who are performing discretionary functions in the course of duty to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995). An officer will be entitled to immunity if she reasonably but mistakenly concludes that probable cause exists. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Williams v. Jaglowski*, 269 F.3d at 781 (7th Cir. 1989) (qualified immunity provides an additional

3

layer of protection against civil liability when actual probable cause is lacking); *Speigel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 2000) (qualified immunity protects all "but the plainly incompetent or those who knowingly violate the law").  The inquiry focuses on whether "arguable" probable cause exists; *could* a police officer reasonably believe that probable cause exists when faced with the same circumstances and having the same knowledge as the officer in question.  *Humphrey*, 148 F.3d at 725.  Put another way, an officer will be immune to a claim based upon an unlawful seizure unless it is obvious that no reasonably competent officer could have believed that probable cause existed.  *Spiegel,* 196 F.3d at 723.

Even if this court were to determine that Lang could not see approaching traffic from behind the stop sign, or even that she did stop before the stop sign, a reasonable officer driving behind Lang could believe, albeit mistakenly, that Lang's vehicle proceeded past the point of intersection with the tangential line of intersection with stop sign.  Accordingly, a reasonable officer would have arguable probable cause to initiate the traffic stop as a matter of law.  Consequently, McCree would be entitled to qualified immunity for Lang's traffic stop as a matter of law.

***The tightness of Lang's handcuffs was not unreasonable as a matter of law; thus, Lang's allegations of excessive force must fail.***

Defendants' excessive force argument is unopposed by Lang.  Consequently, McCree respectfully requests that an award of summary judgment be granted.

***Lang's false arrest claim is barred as a matter of law because McCree had probable cause for her arrest.***

The existence of probable cause is an absolute bar to a claim of false arrest under Section 1983.  *Rodriguez*, 509 F.3d at 398.  The United States Supreme Court in *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), clarified that an officer may effect a full custodial arrest without offending the Fourth Amendment so long as she has probable cause to believe an individual has committed even a very minor criminal offense.  *Atwater*, 532 U.S. at 354.  In this case, it is undisputed that Lang was operating her vehicle while her license was suspended (625 ILCS 5/6-

4

303) and McCree was aware of that fact. (Facts, ¶7 & ¶13). Accordingly, there was probable cause for her arrest, and her false arrest claim is barred as a matter of law.

Interestingly, Lang cryptically argues that her arrest was unreasonable because she was found not guilty of driving on a suspended license. However, this fact does not alter this court's analysis as to whether probable cause existed for her arrest. *Baker v. McCollan*, 433 U.S. 137, 145 (1997) ("The Constitution does not guarantee that only the guilty will be arrested."). Moreover, Lang's argument that McCree "checked her driving record and found out that there had been an administrative error by the emissions inspection agency placing a hold on her license, under 625 ILCS 5/13A-112" and then improperly issued her a citation under 625 ILCS 5/6-303 is entirely baseless and without factual support. (Response, Pg. 3). Notwithstanding, even if McCree knew that Lang was in violation of 625 ILCS 5/13A-112 (See Response, Pg. 5, "Plaintiff should have been arrested for a violation of 625 ILCS 5/13A-112 (1994) and not 625 ILCS 5/6-303 as the Defendant improperly did."), a reasonable officer would have had probable cause to arrest her for that offense, barring her claim for false arrest as a matter of law. *Rodriguez*, 509 F.3d at 399 ("[T]he issue is whether a reasonable officer, with the same information…would have had probable cause to arrest…for any offense."); *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Again, as alleged, Lang's purported constitutional deprivation was her arrest. (Complaint). And, because Lang limited her theory to a false arrest claim, the putative legality of the initial seizure leading up to her arrest is irrelevant. That is, even if this court were to deem Lang's initial seizure unlawful, which it was not, a subsequent set of intervening events can give rise to probable cause barring a claim of false arrest. *Hawthorne v. Sheriff of Broward County*, 212 Fed.Appx. 943, 946 (11th Cir. 2007) ("Regardless of whether the Officers had a warrant or probable cause to arrest Hawthorne for the burglary when they initially approached him, Hawthorne's actions thereafter constituted an intervening set of events giving rise to (at least) arguable probable cause for his arrest."); *Rivera v. Burke*, 2008 WL 345612, *5 (N.D.Ill. 2008) ("[t]he value of the Fourth Amendment is not served if Plaintiff, who illegally possessed cocaine, is allowed to reap the financial benefit from his arrest. Even if Defendants lacked probable cause to stop Plaintiff's vehicle, they certainly had probable cause to arrest him upon discovery of the

cocaine."; see also *Townes v. City of New York*, 176 F.3d 138, 149 (2nd Cir. 1999) ("The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a §1983 claimant."). Consequently, since McCree had probable cause to arrest Lang for driving on a suspended license, Lang may not challenge the constitutional validity of her initial seizure under a theory of false arrest as a matter of law.

***The seizure of the vehicle Lang was operating was reasonable under the community caretaking doctrine.***

Lang does not contest the reasonableness of the vehicle's seizure on community caretaking grounds. Therefore, McCree respectfully requests that summary judgment be awarded in his favor and against the plaintiff as a matter of law.

***As Lang suffered no constitutional violation her Monell claims must fail as a matter of law.***

Lang alleges that her Fourth Amendment rights were violated through the Village's failure to properly train its officers. However, as there is no underlying constitutional violation, Lang's claims against the Village and the Chief must fail.[1] *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000); *Grossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997); *Thompson v. Boggs*, 33 F.3d 847, 859 n. 11 (7th Cir. 1994); see also, *Estate of Phillips v. Milwaukee*, 123 F.3d 586, 596 & 597 (1997). In light of Lang's new challenge as to the constitutionality of her initial stop, Defendants will address her failure to train theory substantively .

Municipal liability may arise through a "policy" of inadequate training. *City of Canton v. Harris,* 489 U.S. 378, 388 (1989). The inadequacy of police training, however, "may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris,* 489 U.S. at 388. That is, a municipality may only be liable where the risk from its decision not to train its officers was "so obvious" that it constitutes deliberate indifference to the usual and recurring situations

6

confronted by law enforcement. *Harris,* 489 U.S. at 390. Put another way, it is only "where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under §1983." *City of Canton v. Harris,* 489 U.S. at 389; *City of Oklahoma v. Tuttle,* 471 U.S. 808, 822 (1985) ("it therefore difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate training,' unless evidence be adduced which proves that the inadequacies resulted from conscious choice – that is, proof that the policymakers deliberately chose a training program which would prove inadequate."). The failure to train must be "the moving force" behind the constitutional violation. *Tuttle,* 471 U.S. at 808; *City of Canton v. Harris,* 489 U.S. at 391 ("for liability to attach in this circumstance the identified deficiency in a city's training program must be *closely related* to the ultimate injury."). Accordingly, to prevail on a failure to train theory, it must not only be established that the municipal policymakers made a "conscious" choice to ignore an obvious risk of harm, but also that there was a direct causal link between the failure to train and the injury. *Pyka v. Village of Orland Park,* 906 F.Supp. 1196, 1231 (N.D. Ill. 1995).

In this case, the record contains no evidence that Posen officers receive inadequate training, let alone evidence that the failure to train amounted to a deliberate indifference to the constitutional rights of persons whom the police come into contact. Additionally absent from the record is any evidence establishing that the moving force behind Lang's injury was the alleged failure to train. Consequently, Lang's theory based upon a failure to train, as directed against the Village and the Chief, must fail as a matter of law.

II.     Illinois State Law Claims

Lang does not address the Defendants' state law arguments. Defendants respectfully request that summary judgment be awarded in their favor as a matter of law.

---

[1] Even assuming the Chief was sued individually.

## CONCLUSION

There are no genuine issues of material fact. Defendants respectfully request that summary judgment be awarded in their favor and against Lang as a matter of law.

                                                  S/     Joseph Cainkar

JOSEPH CAINKAR
LOUIS F. CAINKAR, LTD.
Attorneys for the Defendants
30 North LaSalle Street - #3922
Chicago, Illinois 60602-3333
312/236-3985

## CERTIFICATE OF SERVICE

I, the undersigned, an attorney, on oath state: I served a copy of this Defendans' Reply Memorandum of Law in Support of Their Motion for Summary Judgment by e-mailing a copy to the CMT System for the Northern District of Illinois and by regular mail, postage prepaid, to Gardenia Lang,16344 S. Lawndale Avenue, Markham, Illinois, on July 22, 2008.

                                                  S/     Joseph Cainkar